**MURPHY, FALCON & MURPHY**          )
William H. Murphy, Jr. (07985)          )
Andrew K. O'Connell (28168)          )
Malcolm P. Ruff (21595)          )
Ronald E. Richardson (04673)          )
1 South Street, Suite 3000          )
Baltimore, Maryland 21202          )
Telephone: (410) 539-6500          )
Facsimile: (410 539-6599          )
billy.murphy@murphyfalcon.com          )
andrew.oconnell@murphyfalcon.com          )
malcolm.ruff@murphyfalcon.com          )
ronald.richardson@murphyfalcon.com          )
          )
**THE TRIAL LAW FIRM, LLC**          )
Mart Harris (319504)          )
Fort Pitt Commons          )
445 Fort Pitt Boulevard, Suite 220          )
Pittsburgh, Pennsylvania 15219          )
Telephone: (412) 588-0030          )
mh@tlawf.com          )
          )
**DUNCAN LEGAL GROUP**          )
Jason Duncan (87946)          )
2001 N. Front Street          )
Harrisburg, PA 17102          )
Telephone: (717) 232-1886          )
Facsimile: (717) 232-4189          )
jaybdunc@gmail.com          )
          )
          *Attorneys for Plaintiffs*          )

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| QUINTON BURNS, individually and as Next Friend of K.B. (a minor), and on behalf of a class of similarly situated individuals, )<br><br>And )<br><br>NATHAN FLEMING, individually and as Next Friend of O.F. (a minor), and on behalf of a class of similarly situated individuals, And | Case No.:2:22-CV-02941<br><br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

LASHONDA MILES, individually and as
Next Friend of M.C. (a minor), and on
behalf of a class of similarly situated
individuals,

And

INGRID MORALES, individually and as
Next Friend of N.M. (a minor), and on
behalf of a class of similarly situated
individuals,

And

YOSELIS ROMERO, individually and as
Next Friend of E.C. (a minor), and on behalf
of a class of similarly situated individuals,

And

KATIE VALDEZ, individually and as Next
Friend of M.L. (a minor), and on behalf of a
class of similarly situated individuals,

And

ASHLEY VALETTE, individually and as
Next Friend of D.V. (a minor), and on
behalf of a class of similarly situated
individuals,

And

LAUREN WILLIE, individually and as
Next Friend of L.W. (a minor), and on
behalf of a class of similarly situated
individuals,

          *Plaintiffs,*

          v.

SEAWORLD PARKS &
ENTERTAINMENT, INC. d/b/a

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

2

| | |
|---|---|
| SEASAME PLACE PHILADELPHIA; and | ) |
| SEAWORLD PARKS & | ) |
| ENTERTAINMENT LLC d/b/a | ) |
| SESAME PLACE PHILADELPHIA | ) |
| | ) |
| *Defendants.* | ) |
| | ) |
| | ) |
| | ) |

---

## INTRODUCTION

1.      This amended class action lawsuit is brought on behalf of 89 families involving 125 children to enforce the 13ᵗʰ Amendment to the United States Constitution by way of 42 U.S.C. § 1981, in order to secure the rights of Plaintiffs to make and enforce contracts and to enjoy the security of persons in the same manner as white citizens.

2.      Plaintiffs and Proposed Class Representatives bring this action individually and on behalf of all similarly situated persons as described in ¶ [NUMBER], *supra*.

## PARTIES

1.      Representative Plaintiff Quinton Burns is an adult Black citizen of the United States.

2.      Representative Plaintiff K.B. is a minor Black citizen of the United States, and Representative Plaintiff Quinton Burns' child.

3.      The Representative Plaintiffs ("the Burns") reside in the City of Baltimore, Maryland.

4.      Representative Plaintiff Nathan Fleming is an adult Black citizen of the United States.

5.     Representative Plaintiff O.F. is a minor Black citizen of the United States, and Representative Nathan Flemings' child.

6.     The Representative Plaintiffs ("the Flemings") reside in York, Pennsylvania.

7.     Representative Plaintiff Lashonda Miles is an adult Black citizen of the United States.

8.     Representative Plaintiff M.C. is a minor Black citizen of the United States, and Representative Plaintiff Lashonda Miles' child.

9.     The Representative Plaintiffs ("the Miles") reside in the City of Philadelphia, Pennsylvania.

10.    Representative Plaintiff Ingrid Morales is an adult Hispanic citizen of the United States.

11.    Representative Plaintiff N.M. is a minor Hispanic citizen of the United States, and Representative Ingrid Morales' child.

12.    The Representative Plaintiffs ("the Morales") reside in the City of Philadelphia, Pennsylvania.

13.    Representative Plaintiff Yoselis Romero is an adult Hispanic citizen of the United States.

14.    Representative Plaintiff E.C. is a minor Hispanic citizen of the United States, and Representative Plaintiff Yoselis Romero's child.

15.    The Representative Plaintiff ("the Romeros") reside in Stamford, Connecticut.

16.    Representative Plaintiff Katie Valdez is an adult Hispanic citizen of the United States.

17.     Representative Plaintiff M.L. is a minor Hispanic citizen of the United States, and Representative Katie Valdez's child.

18.     The Representative Plaintiffs ("the Valdez Family") reside in the City of New York, New York.

19.     Representative Plaintiff Ashley Valette is an adult Black citizen of the United States.

20.     Representative Plaintiff D.V. is a minor Black citizen of the United States, and Representative Plaintiff Ashley Valette's child.

21.     The Representative Plaintiffs (the Valettes") reside in West Hempstead, New York.

22.     Representative Plaintiff Lauren Willie is an adult Black citizen of the United States.

23.     Representative Plaintiff L.W. is a minor Black citizen of the United States, and Representative Plaintiff Lauren Willie's child.

24.     The Representative Plaintiffs (the Willies") reside in the city of New York, New York.

25.     Defendant SeaWorld Parks & Entertainment, Inc. d/b/a "Sesame Place Philadelphia", is a for-profit publicly traded corporation.

26.     Defendant SeaWorld Parks & Entertainment LLC d/b/a "Sesame Place Philadelphia" is a for-profit limited liability company.

27.     Both Defendant SeaWorld Parks & Entertainment, Inc. d/b/a "Sesame Place Philadelphia" and Defendant SeaWorld Parks & Entertainment LLC d/b/a "Sesame Place Philadelphia" are organized under the laws of the State of Delaware, and headquartered at 6240 Sea Harbor Drive, Orlando, Florida 32821, and registered with the Pennsylvania Department of

State to conduct business in Pennsylvania. In this class action lawsuit, these Defendants are collectively referred to as "SeaWorld."

28.     At all times relevant, SeaWorld's agents, employees or representatives referenced herein were acting within the course and scope of their actual or apparent authority and responsibilities as a SeaWorld employee.

29.     Upon information and belief, including but not exclusively limited to the fact that the discrimination complained of in this class action lawsuit occurred during business hours, in the light of day, to several different minority children on different days such that said discrimination was caught on video numerous times, SeaWorld was aware of and subsequently ratified and adopted its employees' discriminatory actions.

## JURISDICTION

30.     On information and belief, aggregate claims of individual Class Members exceed $50,000,000.00 exclusive of interests, attorneys' fees and costs.

31.     Jurisdiction is proper in this Court pursuant to 28 U.S.C.A § 1332(d), 1343(a)(3), 1343(a)(4), and 1367(a).

32.     All conditions precedent necessary to the filing of this class action lawsuit have been met.

## VENUE

33.     SeaWorld, through its business of operating Sesame Place Philadelphia, has established sufficient contacts in this District such that personal jurisdiction is appropriate.

34.     SeaWorld is deemed to reside in this District pursuant to 28 U.S.C § 1391.

35.     Venue is proper in this District under 28 U.S.C § 1391 (b)(1) & (2).

## FACTUAL ALLEGATIONS

36.     On or about June 18, 2022, the Burns accepted SeaWorld's offer to purchase admission tickets to SeaWorld's amusement park, Sesame Place Philadelphia.

37.     The Burns performed their contractual duties by tendering remuneration in a bargained for exchange to experience SeaWorld's Sesame Place Philadelphia attraction.

38.     SeaWorld's offer which the Burns accepted included, *inter alia*, the benefit and privilege of enjoyment of the amusement rides and "exclusive Sesame Street themed entertainment" offered at Sesame Place, including but not limited to, amusement park shows featuring "Meet and Greets" with Sesame Street themed costume character performers.

39.     By the terms of the contract between the Burns and SeaWorld, SeaWorld's costume character performers were obligated to not refuse to, on the basis of race "Meet and Greet" with SeaWorld's customers to include the Burns. Similarly, the Burns were entitled to SeaWorld's performance of the contract by way of its costume character performers to "Meet and Greet" with the Burns.

40.     During the Burns' visit to Sesame Place, they attempted to participate in a "Meet and Greet" with SeaWorld's costume character performers dressed as Sesame Street characters "Elmo", "Ernie", "Telly Monster", & "Abby Cadabby."

41.     SeaWorld's costume character performers dressed as Sesame Street characters "Elmo", "Ernie", "Telly Monster", & "Abby Cadabby" intentionally refused to perform SeaWorld's contract with the Burns and the Class by, *inter alia,* refusing to engage with them and ignoring them.

7

42.     The Burns took videos, documenting some of these discriminatory interactions.[1],[2]

43.     Upon information and belief, including but not exclusively limited to, the fact that SeaWorld's performers readily engaged with numerous similarly situated white customers and their children who participated in the costume character performer "Meet and Greets," SeaWorld's actions, by their agents and/or employees, were intentional race discrimination.

44.     SeaWorld, by their agents and/or employees, unlawfully and substantially refused to perform its contract with the Burns, which is an enumerated activity. See *Brown v. Phillip Morris, Inc.*, 250 F.3d 789, 797 (3rd Cir. 2001).

45.     On or about July 4, 2022, the Flemings accepted SeaWorld's offer to purchase admission tickets to SeaWorld's amusement park, Sesame Place Philadelphia.

46.     The Flemings performed their contractual duties by tendering remuneration in a bargained for exchange to experience SeaWorld's Sesame Place Philadelphia attraction.

47.     SeaWorld's offer which the Flemings accepted included, *inter alia,* the benefit and privilege of enjoyment of the amusement rides and "exclusive Sesame Street themed entertainment" offered as Sesame Place, including but not limited to amusement park parades featuring Sesame Street themed costumed characters performers.

48.     By the terms of the contract between the Flemings and SeaWorld, SeaWorld's costume character performers were obligated to not refuse to, on the basis of race interact with SeaWorld's customers including the Flemings. Similarly, the Flemings were entitled to SeaWorld's performance of the contract by way of its costume character performers to interact with the Flemings.

---

[1] This and all videos referenced herein are accessible by copying and pasting included links into a browser: https://youtu.be/-cG-I6TUIHE
[2] https://youtu.be/4LYTbMxZ_y0

49.     During the Flemings' visit to Sesame Place, they attempted to participate in a Parade with SeaWorld's costume character performer dressed as Sesame Street character "Telly Monster".

50.     SeaWorld's costume character performer dressed as Sesame Street character, "Telly Monster" intentionally refused to perform SeaWorld's contract with the Flemings and the Class by, *inter alia,* refusing to engage with them.

51.     The Flemings took videos, documenting some of these discriminatory interactions.[3],[4]

52.     Upon information and belief, including but not exclusively limited to, the fact that SeaWorld's performers readily engaged with numerous similarly situated white customers and their children who participated in the costume character performer Parades, SeaWorld's actions, by their agents and/or employees, were intentional race discrimination.

53.     SeaWorld, by their agents and/or employees, unlawfully and substantially refused to perform its contract with the Flemings, which is and enumerated activity. See *Brown v. Phillip Morris, Inc.,* 250 F.3d 789, 797 (3rd Cir. 2001).

54.     On or about June 24, 2022, the Miles accepted SeaWorld's offer to purchase admission tickets to SeaWorld's amusement park, Sesame Place Philadelphia.

55.     The Miles performed their contractual duties by tendering remuneration in a bargained for exchange to experience SeaWorld's Sesame Place Philadelphia attraction.

56.     SeaWorld's offer which the Miles accepted, included, *inter alia,* the benefit and privilege of enjoyment of the amusement rides and "exclusive Sesame Street themed

---

[3] **https://youtu.be/lPj9MwVAzNo**
[4] **https://youtu.be/VnKItfZy8K8**

9

entertainment" offered at Sesame Place, including but not limited to, amusement park Parades featuring Sesame Street themed costume character performers.

57.     By the terms of the contract between the Miles and SeaWorld, SeaWorld's costume performers were obligated to not refuse to, on the basis of race interact with SeaWorld's customers including the Miles. Similarly, the Miles were entitled to SeaWorld's performance of the contract by way of its costume character performers to interact with the Miles.

58.     During the Miles' visit to Sesame Place, they attempted to participate in a Parade with SeaWorld's costume character performer dressed as Sesame Street character "Rosita".

59.     SeaWorld's costume character performer dressed as Sesame Street character "Rosita" intentionally refused to perform SeaWorld's contract with the Miles and the Class by, *inter alia,* refusing to engage with them and ignoring them.

60.     The Miles took videos, documenting some of these discriminatory interactions.[5]

61.     Upon information and belief, including but not exclusively limited to, the fact that SeaWorld's performers readily engage with numerous similarly situated white customers and their children who participated in the costume character performer Parades, SeaWorld's actions, by their agents and/or employees, were intentional race discrimination.

62.     SeaWorld, by their agents and/or employees, unlawfully and substantially refused to perform its contract with the Miles, which is an enumerated activity. See *Brown v. Phillip Morris, Inc.,* 250 F. 3d 789, 797 (3rd Cir. 2001).

63.     On or about July 11, 2022, the Morales accepted SeaWorld's offer to purchase admission tickets to SeaWorlds amusement park, Sesame Place Philadelphia.

---

[5] **https://youtube.com/shorts/Co-Uiterwfw?feature=share**

64.     The Morales performed their contractual duties by tendering remuneration in a bargained for exchange to experience SeaWorld's Sesame Place Philadelphia attraction.

65.     SeaWorld's offer which the Morales accepted, included, *inter alia,* the benefit and privilege of enjoyment of the amusement rides and "exclusive Sesame Street themed entertainment" offered at Sesame Place, including but not limited to, amusement park Parades featuring Sesame Place themed costume performers.

66.     By the terms of the contract between the Morales and SeaWorld, SeaWorld's costume character performers were obligated to not refuse to, on the basis of race interact with SeaWorld's customers including the Morales. Similarly, the Morales were entitled to SeaWorld's performance of the contract by way of its costume character performer to interact with the Morales.

67.     During the Morales' visit to Sesame Place, they attempted to participate in a Parade with SeaWorld's costume character performers dressed as Sesame Street characters "Big Bird", "Grover" and "Baby Bear".

68.     SeaWorld's costume performers dressed as "Big Bird", "Grover" and "Baby Bear" intentionally refused to perform SeaWorld's contract with the Morales and Class by, *inter alia,* refusing to engage with them and ignoring them.

69.     The Morales took videos, documenting some of these discriminatory interactions.[6],[7]

70.     Upon information and belief, including but not exclusively limited to, the fact that SeaWorld's performers readily engaged with numerous similarly situated white customers and their children who participated in the costume character performer Parades, SeaWorld's actions, by their agents and/or employees, were intentional race discrimination.

---

[6] **https://youtube.com/shorts/JgsHGKo0RVE?feature=share**
[7] **https://youtu.be/AuHoey9cq6I**

71.     SeaWorld, by their agents and/or employees, unlawfully and substantially refused to perform its contract with the Morales, which is an enumerated activity. See *Brown v Phillip Morris, Inc.,* 250 F.3d 789, 797 (3rd Cir. 2001).

72.     On or about June 25, 2022, the Romeros accepted SeaWorld's offer to purchase admission tickets to SeaWorld's amusement park, Sesame Place Philadelphia.

73.     The Romeros performed their contractual duties by tendering remuneration in a bargained for exchange to experience SeaWorld's Sesame Place Philadelphia attractions.

74.     SeaWorld's offer which the Romeros accepted included, *inter alia,* the benefit and privilege of enjoyment of the amusement rides and "exclusive Sesame Street themed entertainment" offered at Sesame Place, including but not limited to, amusement park Parades featuring Sesame Street themed costume character performers.

75.     By the terms of the contract between the Romeros and SeaWorld, SeaWorld's costume character performers were obligated to not refuse to, on the basis of race interact with SeaWorld's customers including the Romeros. Similarly, the Romeros were entitled to SeaWorld's performance of the contract by way of its costume character performers to interact with the Romeros.

76.     During the Romeros' visit to Sesame Place, they attempted to participate in a Parade with SeaWorld's costume character performers dressed as Sesame Street characters "Zoey" and "Cookie Monster".

77.     SeaWorld's costume character performers dressed as Sesame Street characters "Zoey" and "Cookie Monster" intentionally refused to perform SeaWorld's contract with the Romeros and the Class by, *inter alia,* refusing to engage with them.

78.     The Romeros took videos, documenting some of these discriminatory interactions.[8],[9]

79.     Upon information and belief, including but not exclusively limited to, the fact that SeaWorld's performers readily engaged with numerous similarly situated white customers and their children who participated in the costume character performer Parades. SeaWorld's action, by their agent and/or employees, were intentional race discrimination.

80.     SeaWorld, by their agents and/or employees, unlawfully and substantially refused to perform its contract with the Romeros, which is an enumerated activity. See *Brown v Phillip Morris, Inc.,* 250F.3d 789, 797 (3rd Cir. 2001).

81.     On or about December 29, 2021, the Valdez family accepted SeaWorld's offer to purchase admission tickets to SeaWorld's amusement park, Sesame Place Philadelphia.

82.     The Valdez family performed their contractual duties by tendering remuneration in a bargained for exchange to experience SeaWorld's Sesame Place Philadelphia attractions.

83.     SeaWorld's offer which the Valdez family accepted included, *inter alia,* the benefit and privilege of enjoyment of the amusement rides and "exclusive Sesame Street themed entertainment" offered at Sesame Place, including but not limited to, amusement park Parades featuring Sesame Street themed costume character performers.

84.     By the terms of the contract between the Valdez family and SeaWorld, SeaWorld's costume character performers were obligated to not refuse to, on the basis of race interact with SeaWorld's customers including the Valdez family. Similarly, the Valdez family were entitled to SeaWorld's performance of the contract by way of its costume character performers to interact with the Valdez family.

---

[8] **https://youtube.com/shorts/fI8TzKcv8C0?feature=share**
[9] **https://youtube.com/shorts/2ijfvt2JKcs?feature=share**

85.     During the Valdez family's visit to Sesame Place, they attempted to participate in a Parade with SeaWorld's costume character performer dressed as Sesame Street character "Abby Cadabby".

86.     SeaWorld's costume character performer dressed as Sesame Street character "Abby Cadabby" intentionally refused to perform SeaWorld's contract with the Valdez family and the Class by, *inter alia,* refusing to engage with them and ignoring them.

87.     The Valdez Family took videos, documenting some of these discriminatory interactions.[10]

88.     Upon information and belief, including but not exclusively limited to, the fact that SeaWorld's performers readily engaged with numerous similarly situated white customers and their children who participated in the costume character performer Parades. SeaWorld's actions, by their agents and/or employees, were intentional race discrimination.

89.     SeaWorld, by their agents and/or employees, unlawfully and substantially refused to perform its contract with the Valdez family, which is an enumerated activity. See *Brown v. Phillip Morris, Inc.,* 250 F3d 789, 797 (3rd Cir. 2001).

90.     On or about June 20, 2022, the Valettes accepted SeaWorld's offer to purchase admission tickets to SeaWorld's amusement park, Sesame Place Philadelphia.

91.     The Valettes performed their contractual duties by tendering remuneration in a bargained for exchange to experience SeaWorld's Sesame Place Philadelphia attraction.

92.     SeaWorld's offer which the Valettes accepted included, *inter alia,* the benefit and privilege of enjoyment of the amusement rides and "exclusive Sesame Street themed

---

[10] https://youtube.com/shorts/RYi0V6hYDEw?feature=share

entertainment" offered at Sesame Place, including but not limited to, amusement park Parades featuring Sesame Street themed costume character performers.

93.     By the terms of the contract between the Valettes and SeaWorld, Sea World's costume character performers were obligated to not refuse to, on the basis of race interact with SeaWorld's customers including the Valettes. Similarly, the Valettes were entitled to SeaWorld's performance of the contract by way of its costume character performers to interact with the Valettes.

94.     During the Valettes' visit to Sesame Place, they attempted to participate in a Parade with SeaWorld's costume character performer dressed as Sesame Street character "Grover".

95.     SeaWorld's costume character performer dressed as Sesame Street character "Grover" intentionally refused to perform SeaWorld's contract with the Valettes and the Class by, *inter alia,* refusing to engage with them and ignoring them.

96.     The Valettes took videos, documenting some of these discriminatory interactions.[11]

97.     Upon information and belief, including but not exclusively limited to, the fact that SeaWorld's performers readily engaged with numerous similarly situated white customers and their children who participated in the costume character performer Parades. SeaWorld's actions, by their agents and/or employees, were intentional race discrimination.

98.     SeaWorld, by their agents and/or employees, unlawfully and substantially refused to perform its contract with the Valettes, which is an enumerated activity. See *Brown v. Phillip Morris, Inc.,* 250 F.3d 789, 797 (3rd Cir. 2001).

99.     On or about July 10, 2022, the Willies accepted SeaWorld's offer to purchase admission tickets to SeaWorld's amusement park, Sesame Place Philadelphia.

---

[11] **https://youtube.com/shorts/uhPP-Uk4dsA?feature=share**

100.    The Willies performed their contractual duties by tendering remuneration in a bargained for exchange to experience SeaWorld's Sesame Place Philadelphia attraction.

101.    SeaWorld's offer which the Willies excepted included, *inter alia,* the benefit and privilege of enjoyment of the amusement rides and "exclusive Sesame Street themed entertainment" offered at Sesame Place, including but not limited to amusement park shows featuring "Meet and Greets" with Sesame Street themed costume character performers.

102.    By the terms of the contract between the Willies and SeaWorld, SeaWorld's costume character performers were obligated to not refuse to, on the basis of race "Meet and Greet" with SeaWorld's customers to include the Willies. Similarly, the Willies were entitled to SeaWorld's performance of the contract by way of its costume character performers to "Meet and Greet" with the Willies.

103.    During the Willies' visit to Sesame Place, they attempted to participate in a "Meet and Greet" with SeaWorld's costume character performer dressed as Sesame Street character "Rosita".

104.    SeaWorld's costume character performer dressed as Sesame Street character "Rosita" intentionally refused to perform SeaWorld's contract with the Willies and the Class by, *inter alia,* refusing to engage with them.

105.    The Willies took videos, documenting some of these discriminatory interactions.[12]

106.    Upon information and belief, including but not exclusively limited to, the fact that SeaWorld's performers readily engaged with numerous similarly situated white customers and their children who participated in the costume character performer "Meet and Greets", SeaWorld's actions, by their agents and/or employees, were intentional race discrimination.

---

[12] **https://youtube.com/shorts/8RLdt4fRv1A?feature=share**

107.    SeaWorld, by their agents and/or employees, unlawfully and substantially refused to perform its contract with the Willies, which is an enumerated activity. See *Brown v Phillip Morris, Inc.,* 250 F.3d 789, 797 (3rd Cir. 2001).

## CLASS ACTION ALLEGATIONS

108.    The Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Plaintiffs Class pursuant to Federal Rules of Civil Procedure 23(a), (b)(3), and/or (b)(2).  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of those provisions.

109.    The Class that the Plaintiffs seek to represent is defined as follows:

(a)     All minority persons who;

(b)     Since July 27, 2018;

(c)     entered contracts with SeaWorld for admission into Sesame Place Philadelphia who;

(d)     suffered disparate treatment from SeaWorld and/or its agents and/or employees by;

(e)     ignoring minority children while openly interacting with similarly situated white children.

110.    <u>Numerosity</u>:  Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, upon information and belief, the current number consists of  89 families involving 125 children and, because over 1 million guests visit Sesame Place Philadelphia each year, that number is likely to increase such that joinder is impracticable.  The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.  The Class Members are readily identifiable.

111. <u>Typicality</u>:  The Plaintiffs' claims are typical of the claims of the Class. Like all Class Members, the Plaintiffs entered into  contracts with  SeaWorld by way of their ticketed admission to SeaWorld's amusement park, Sesame Place Philadelphia, and therein, suffered disparate treatment from SeaWorld solely based on their race or color that unlawfully interfered with their enumerated right to make and enforce contracts in the same manner as is enjoyed by white citizens when SeaWorld and/or its agents and/or its employees refused to interact with minority children while openly interacting with white children. The Plaintiffs, like all Class Members, have been damaged by SeaWorld's misconduct in that they have incurred damages to their enumerated civil rights, have and/or will incur economic damages, and/or have or will incur non-economic damages, including but not limited to humiliation, embarrassment, mental anguish, psychological stress, depression, anxiety, loss of self-respect, post-traumatic stress, damage to their physical health, and loss of life and/or professional opportunities.  Furthermore, the factual bases of SeaWorld's misconduct, that SeaWorld and/or its agents and/or its employees refused to interact with minority children while openly interacting with white children are common to all Class Members and represent a common thread of illegal impairment and infringement committed against the Class Members' civil right to contract, resulting in injury to all Class Members.

112. <u>Commonality</u>:  There are questions of law and fact common to the Plaintiffs and the Class that predominate over any question affecting only individual Class Members.  These common legal and factual issues include the following:

    a)  Whether there was a contractual nexus between the Class Member and the SeaWorld.

    b)  Whether SeaWorld, through its agents and/or employees intentionally discriminated against Class Members based on their race or color.

c) Whether SeaWorld's agents and/or employees were acting within the scope of their apparent authority at the time of their racially motivated discriminatory conduct towards Class Members.

d) Whether SeaWorld's racially motivated discrimination against Class Members is based on a widespread pattern and practice of disparate treatment of minority citizens that is directly attributable to SeaWorld.

e) Whether SeaWorld failed to meet its duties to undertake adequate measures in hiring, supervising, and training its agents and/or employees.

f) Whether SeaWorld was aware of and/or subsequently ratified the racially based discriminatory conduct of its agents and/or employees.

113.  <u>Adequate Representation</u>:  The Plaintiffs will fairly and adequately protect the interests of the Class Members. The Plaintiffs have retained attorneys experienced in the prosecution of class actions, and the Plaintiffs intend to prosecute this action vigorously. One of the Plaintiffs' attorneys particularly, recently clarified through Third Circuit litigation that courts were too narrowly interpreting 42 U.S.C. § 1981 from 1992 through 2021, such that a cause of action can be maintained even when services were ultimately provided to the aggrieved plaintiff and therein in a case of first impression, actualized a cause of action for hostile retail environment liability under the statute with such case to be tried in this Courthouse this coming Fall. Furthermore;

(a)  The interests of the Plaintiffs are consistent with and not antagonistic to the interests of the Class.

(b)  The prosecutions of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications with respect to individual members

of the class, and it would establish incompatible standards of conduct for the parties anticipated to oppose the class.

(c)     The prosecutions of separate actions by individual Class Members would, as a practical matter, substantially impair or impede the ability of the other Class Members to preserve and protect their interests.

(d)     The Plaintiffs allege that it is desirable to concentrate all litigation in one forum because all their claims arose in the same location; and consolidation of their claims will promote judicial efficiency to resolve their common questions of law and fact in one single forum.

114.   <u>Predominance and Superiority</u>:  The Plaintiffs and the Class Members have all suffered and will continue to suffer harm and damages because of Defendants' unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  It is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct.  Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

## FIRST CAUSE OF ACTION

### (Race Discrimination in Violation of 42. U.S.C.A. § 1981)

115.    All preceding paragraphs are incorporated to this Count.

116.    The Plaintiffs and Class Members are minorities, and therefore are members of a federally protected class of citizens against racial discrimination in contract pursuant to §1981.

117.    The Plaintiffs and Class Members entered binding contracts with SeaWorld for admission to its amusement park, Sesame Place Philadelphia. The minor Plaintiffs are third party beneficiaries of their parents' and/or guardians' and/or other adults' contracts with SeaWorld, as the contracts at issue were for the benefit of the minor children who do not have the legal capacity to enter contracts in their own right under Pennsylvania law.

118.    SeaWorld refused to perform its contract with the Plaintiffs and Class members, who each attempted to enforce the enjoyment of all benefits, privileges, terms, and conditions of their contracts with SeaWorld, which specifically included SeaWorld's promise to engage in "Meet and Greets" and Parades between its Sesame Street themed costume character performers such as "Elmo", "Ernie", "Telly Monster",  "Abby Cadabby",  "Grover", "Rosita", "Big Bird", "Baby Bear", "Zoey", "Cookie Monster", and the children.

119.    SeaWorld, by its agents and/or employees, intentionally discriminated against the Plaintiffs and Class Members based on their race or color by intentionally choosing to interact only with white patrons and refusing to interact with the Plaintiffs or Class Members during the performance of their contracts.

120.    SeaWorld is vicariously liable under the theory of *respondeat superior* for its employees' violations of § 1981 committed within the scope of their employment against the Plaintiffs and Class Members. *See Williams v. Cloverland Farms Dairy, Inc.*, 78 F.Supp.2d 479,

485 (1999) (quoting *Fitzgerald v. Mountain States Telephone & Telegraph Co.*, 68 F.3d 1257, 1262-63 (10th Cir. 1995)).  *See also*, Restatement (Second) of Agency § 219 (1957).

121.    SeaWorld, by the racially motivated discriminatory conduct of its agents and/or employees, who at all times relevant acted with the scope of their employment, substantially and unreasonably impaired and infringed upon the Plaintiffs' and Class Members' enumerated right to make and enforce their contracts with SeaWorld as is enjoyed by white citizens by unilaterally changing the terms of their contract with the Plaintiffs and Class Members to exclude participation in "Meet and Greets" and Parades during the performance of the agreement, solely because of their race or color.

122.    SeaWorld, by the racially motivated discriminatory conduct of its agents and/or employees, substantially and unreasonably impaired and infringed upon the Plaintiffs and Class Members' enumerated right to make and enforce their contracts with SeaWorld as is enjoyed by white citizens by creating a hostile retail environment.

123.    As a direct and proximate cause of SeaWorld's actions and/or inactions, the Plaintiffs and Class Members suffered damages to their civil rights, mental health, and personal dignity.

## SECOND CAUSE OF ACTION

## NEGLIGENCE

124.    The Plaintiffs and Class Members incorporate herein by reference all preceding paragraphs of this Complaint, the same as if fully set forth hereinafter.

125.    At all relevant times, Plaintiffs and Class Members were business invitees at the park, and accordingly, Defendants owed Plaintiffs' duties of care set forth in more detail below.

126.    At all times relevant hereto, Defendants, by and through their authorized agents, servants, employees, officers and/or members who were acting within the course and scope of their employment and/or authority assumed a duty to provide a park experience that is free of discrimination based upon race or color.

127.    Defendants, by and through their agents, servants, employees, officers and/or members, were negligent, grossly negligent, careless, and acted with a reckless indifference to the civil rights of Plaintiffs by:

    a.  Failing to provide a reasonably safe premises for all business invitees, including Plaintiffs and Class Members.

    b.  Failing to monitor its employees;

    c.  Failing to screen and perform background checks potential employees to ensure that no employee has a propensity for racial discrimination;

    d.  Failing to have, enact, follow and enforce policies and procedures for screening potential employees;

    e.  Failing to have, enact, follow and enforce policies and procedures designed to prevent and discourage racial discrimination in customer interactions;

    f.  Failing to train, educate, supervise or inform its employees to avoid racial discrimination in customer interactions;

    g.  Enacting policies, practices and/or customs that encouraged and rewarded racial discrimination in customer interactions;

    h.  Condoning and/or encouraging employee practices that fostered racial discrimination among customers;

    i.   Failing to use due care under the circumstances to prevent its employees from engaging in racial discrimination;

    j.   Violating the standards set forth by applicable state, federal, and local regulations and codes against discriminatory conduct, including 42 U.S.C. § 1981, and Pennsylvania Human Relations Act 42 P.S. §§ 953, 954,

    k.   Failing to have policies and procedures to prevent employees from engaging in racial discrimination;

    l.   Failing to use, require and enforce policies and procedures that ensure the hiring  and training of employees who do not engage in racial discrimination;

    m.   Failing to have policies and procedures designed to educate employees about racial discrimination and/or implicit bias;

    n.   Failing to use, require and enforce policies and procedures designed to educate employees about racial discrimination and/or implicit bias;

    o.   Failing to properly train the employees and managers to recognize incidents of racial discrimination between employees and customers;

    p.   Failing to properly train the employees and managers on how to document and report incident of racial discrimination between employees and customers;

    q.   Failing to properly train the employees and managers to recognize employees who are engaged in racial discrimination of customers;

    r.   Failing to adopt, enact, employ and enforce proper and adequate programs,  precautions, procedures, measures and plans to prevent racial

discrimination between employees and customers, including Plaintiffs;

s.  Failing to adequately plan, plot and implement policies, procedures and responses related to racial discrimination between employees and customers;

t.  Failing to require, use, and enforce proper and necessary disciplinary measures against employees committing racial discrimination against customers, including Plaintiffs;

u.  Enacting inadequate policies and procedures to prevent or discourage employees from committing acts of racial discrimination against customers, including Plaintiffs;

v.  Creating an environment and culture prone to racial discrimination against customers, including Plaintiffs;

w.  Encouraging racial discrimination against customers, including Plaintiffs;

x.  Failing to fire employees who engage in racial discrimination against customers, including Plaintiffs;

y.  Failing to take any corrective actions against employees that engage in racial discrimination against customers including Plaintiffs;

z.  Despite extensive knowledge of racial discrimination engaged in by their employees against customers, including Plaintiffs, at the Park, failing to take sufficient action against the employees with known incidents of racial discrimination;

aa. Despite extensive knowledge of racial discrimination engaged in by their employees at the Park, failing to take sufficient action to prevent any future

incidents of racial discrimination against customers, including Plaintiffs, from

occurring;

bb. Despite extensive knowledge of racial discrimination engaged in by their

employees at the Park, failing to take sufficient action to protect invitees to the

Park from the conduct and racial discrimination of their employees;

cc. Knowing or having reason to know of facts, which created a high risk of racial

discrimination to Plaintiffs and proceeding to act in conscious disregard of or

with reckless indifference to the known risk of racial discrimination to Plaintiffs;

and

dd. Negligently breaching their duties.

128.    By reason of the negligence, gross negligence, carelessness and recklessness of Defendants, by and through their authorized agents, servants, employees, and/or officers who were acting within the course and scope of their employment and/or authority, as aforesaid, Plaintiffs were caused to endure blatant, public and demeaning racial discrimination as more fully described in the preceding paragraphs of this Complaint.

WHEREFORE, Plaintiffs claim of Defendants sums in excess of Fifty Million Dollars ($50,000,000.00) in damages, including punitive damages, exclusive of interest and costs, pursuant to Pa.R.C.P. § 238, and bring this action to recover the same.

## PRAYER FOR RELIEF

129.    The Plaintiffs and Class Members are entitled to legal and equitable relief against all Defendants, including compensatory damages, consequential damages, punitive damages, specific performance, injunctive relief, attorneys' fees, costs of suit, and other relief as appropriate.

## RELIEF REQUESTED

130.    The Plaintiffs, on behalf of themselves and all others similarly situated, request the Court to enter judgment against Defendants, and accordingly request the following:

(a)     An order certifying the proposed Class designating Plaintiffs Quinton Burns and K.B., Nathan Fleming and O.F., Lashonda Miles and M.C., Ingrid Morales and N.M., Yoselis Romero and E.C., Katie Valdez and M.L, Ashley Valette and D.V. and Lauren Willie and L.W. as named representatives of the Class, and designating the undersigned as Class Counsel;

(b)     A declaration that Defendants are financially responsible for notifying all Class Members about their discriminatory conduct towards their minority patrons and offer an unconditional apology to the Class Members and to minority United States citizens;

(c)     A declaration that Plaintiffs, and all minority citizens, have a federally protected right to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations of SeaWorld's amusement park Sesame Place Philadelphia;

(d)     An order enjoining SeaWorld and its agents and/or employees from engaging in the racially discriminatory conduct alleged herein and any other racially discriminatory conduct;

(e)     A further order requiring SeaWorld to implement rigorous mandatory cultural sensitivity training for its agents and/or employees so that they can better recognize, understand, and deliver an inclusive, and equitable experience to all members of the public irrespective of their race;

27

(f)     A further order requiring SeaWorld to implement mandatory educational courses for its agents and/or employees on the history of discrimination against minority people in America provided by a mutually agreed upon nationally acclaimed expert in the field of African and minority History and Culture;

(g)     A further order requiring SeaWorld to implement state of the art psychological screening methods for vetting their potential agents and/or employees to avoid hiring racially bigoted employees and agents, and to evaluate by appropriate psychological testing and behavioral history whether its existing agents and/or employees are racially bigoted who therefore should not be retained;

(h)     An award to the Plaintiffs and Class Members of compensatory, actual, punitive, and statutory damages, including interest, in excess of $50,000,000.00;

(i)     An award of attorneys' fees and costs as allowed by law;

(j)     An award of pre-judgment and post-judgment interest as provided by law;

(k)     Leave to amend the Complaint to conform to the evidence produced at trial; and

(l)     Such other relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

131.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury

of any and all issues in this action so triable of right.


Respectfully submitted,

**MURPHY, FALCON & MURPHY**


/s/ *William H. Murphy, Jr.*
William H. Murphy, Jr. (07985)
Andrew K. O'Connell (28168)
Malcolm P. Ruff (21595)
Ronald E. Richardson (04673)
1 South Street, Suite 3000
Baltimore, Maryland 21202
Telephone: (410) 539-6500
Facsimile: (410) 539-6599
billy.murphy@murphyfalcon.com
andrew.oconnell@murphyfalcon.com
malcolm.ruff@murphyFalcon.com
ronald.richardson@murphyfalcon.com

**THE TRIAL LAW FIRM, LLC**


/s/ *Mart Harris*
Mart Harris (319504)
Fort Pitt Commons
445 Fort Pitt Boulevard, Suite 220
Pittsburgh, Pennsylvania 15219
Telephone: (412) 588-0030
Facsimile: (412) 265-6505
mh@tlawf.com

**DUNCAN LEGAL GROUP**

/s/ *Jason Duncan*
Jason Duncan (87946)
2001 N. Front Street
Harrisburg, PA 17102
Telephone: (717) 232-1886
Facsimile: (717) 232-4189
jaybdunc@gmail.com

*Attorneys for Plaintiffs*