**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| QUINTON BURNS, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | |
| SEAWORLD PARKS & | : | NO. 22-cv-02941 |
| ENTERTAINMENT, INC.; and | : | |
| SEAWORLD PARKS & | : | |
| ENTERTAINMENT LLC, | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |

**<u>DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF</u>**
**<u>MOTION TO DISMISS AMENDED COMPLAINT</u>**

**TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND .........................................1

III.   LEGAL STANDARDS ..........................................................................................2

       A.     Federal Rule of Civil Procedure 12(b)(6) ................................................. 2

       B.     Federal Rule of Civil Procedure 12(b)(1) ................................................. 3

IV.    THE AMENDED COMPLAINT FAILS TO STATE ANY CLAIM ON WHICH
       RELIEF CAN BE GRANTED .............................................................................4

       A.     The Amended Complaint Fails to State an Actionable Claim for Violation
              of 42 U.S.C. § 1981 .................................................................................... 4

              1.     Elements of the Cause of Action ..................................................... 4

              2.     Plaintiffs Fail to Adequately Allege a Contract ........................... 5

              3.     Plaintiffs Fail to Adequately Allege a Contractual Right to Personal
                     Interactions with Costumed Characters During "Meet and Greets" or
                     Parades ............................................................................................. 6

              4.     Plaintiffs Fail to Adequately Allege That Intentional Discrimination Was
                     the But-For Cause of Their Experiences ......................................... 9

       B.     The Amended Complaint Fails to State an Actionable Claim for
              Negligence ................................................................................................ 11

              1.     Elements of the Cause of Action ................................................... 11

              2.     Plaintiffs Fail to Plead Breach of Any Duty Owed to Business Invitees.. 11

              3.     Plaintiffs Fail to Otherwise Plead Negligence ........................... 13

       C.     The Valdez and Willie Families Must Be Dismissed Because They Have
              Waived Their Right to Participate in Any Form of Class Action........................ 16

V.     PLAINTIFFS LACK ARTICLE III STANDING FOR INJUNCTIVE RELIEF ............16

VI.    CONCLUSION....................................................................................................18

## **TABLE OF AUTHORITIES**

**Federal Cases**

*Anjelino v. N.Y. Times Co.*, 200 F.3d 73 (3d Cir. 1999) .................................................................5

*Arguello v. Conoco, Inc.*, 330 F.3d 355 (5th Cir. 2003) .............................................................5, 8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................................... 2-3

*Ballentine v. United States*, 486 F.3d 806 (3d Cir. 2007) ..........................................................3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................2, 10

*Bobbitt by Bobbitt v. Rage Inc.*, 19 F. Supp. 2d 512 (W.D.N.C. 1998)......................................8

*Brown v. Philip Morris Inc.*, 250 F.3d 789 (3d Cir. 2001) .........................................................4

*Buttermore v. Loans*, 2016 WL 308875 (W.D. Pa. Jan. 25, 2016)....................................... 13-14

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) .............................................................. 3, 17-18

*Cmty. Ass'n Underwriters of Am., Inc. v. Queensboro Flooring Corp.*, 2016 WL
      852520 (M.D. Pa. Mar. 4, 2016).............................................................................12

*Comcast Corp. v. Nat'l Ass'n of Afr. Am. Owned Media*, 140 S. Ct. 1009 (2020)............... *Passim*

*Connelly v. Lane Constr. Corp.*, 809 F.3d 780 (3d Cir. 2016) ............................................. 2-3, 13

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006) .................................................................16

*Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470 (2006) ......................................................... 5-6

*E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395 (1977)...........................................11

*Freedom from Religion Found. Inc. v. New Kensington Arnold Sch. Dist.*, 832
      F.3d 469 (3d Cir. 2016)..............................................................................................17

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167
      (2000)..........................................................................................................................17

*Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375 (1982)................................10

*Goldstein v. Home Depot U.S.A., Inc.*, 609 F. Supp. 2d 1340 (N.D. Ga. 2009)...........................18

*Gunn v. Minton*, 568 U.S. 251 (2013).........................................................................................16

*Hassan v. City of New York*, 804 F.3d 277 (3d Cir. 2015) ..........................................................4

*James v. City of Wilkes-Barre*, 700 F.3d 675 (3d Cir. 2012)............................................2

*Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304 (11th Cir. 2010)....................................6

*In re Johnson & Johnson Talcum Powder Prods. Mktg. Sales Pracs. & Liab.
    Litig.*, 903 F.3d 278 (3d Cir. 2018)...........................................17

*Kennedy Theater Ticket Serv. v. Ticketron, Inc.*, 342 F. Supp. 922 (E.D. Pa. 1972)........................5

*Kirschbaum v. WRGSB Assoc.*, 243 F.3d 145 (3d Cir. 2001).......................................11

*Korea Week Inc. v. Got Capital, LLC*, 2016 WL 3049490 (E.D. Pa. May 27,
    2016) ...........................................16

*Levin v. Dollar Tree Stores Inc.*, 2006 WL 3538964 (E.D. Pa. Dec. 6, 2006) ...........................13

*Lewis v. J.C. Penney Co., Inc.*, 948 F. Supp. 367 (D. Del. 1996)......................................8

*Lloyd v. Hilton Garden Inn*, 2021 WL 2206291 (E.D. Pa. June 1, 2021) ......................................7

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ......................................3

*Lundy v. Hochberg*, 91 F. App'x 739 (3d Cir. 2003)......................................17

*Mayer v. Belichick*, 605 F.3d 223 (3d Cir. 2010) ......................................3, 7, 9

*McNair v. Synapse Grp. Inc.*, 672 F.3d 213 (3d Cir. 2012).................................... 17-18

*O'Haro v. Bob Evans Farms, Inc.*, 2010 WL 4942219 (M.D. Pa. Oct. 4, 2010) ...........................8

*O'Shea v. Littleton*, 414 U.S. 488 (1974) ......................................4

*Oldham v. Pa. State Univ.*, 2022 WL 1528305 (W.D. Pa. May 13, 2022)....................................14

*Parker v. Sw. Airlines Co.*, 406 F. Supp. 3d 1328 (M.D. Fla. 2019) ...............................8

*Paschal v. Billy Beru, Inc.*, 2009 WL 1099182 (W.D. Pa. Apr. 23, 2009)................................ 6-7

*Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548 (3d Cir. 2002) ...........................3

*Renne v. Geary*, 501 U.S. 312 (1991) ......................................16

*Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A.)*, 768
    F.3d 284 (3d Cir. 2014)......................................3, 7

*Schmidt v. Skolas*, 770 F.3d 241 (3d Cir. 2014) ......................................3

*Schuchardt v. President of the United States*, 839 F.3d 336 (3d Cir. 2016)....................................4

*Silva v. Rite Aid Corp.*, 416 F. Supp. 3d 394 (M.D. Pa. 2019) ........................................................18

*Speirs v. Marriott Int'l*, 2009 WL 3365877 (E.D. Pa. Oct. 20, 2009) ..................................... 11-12

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), *as revised* (May 24, 2016) ..................................4

*Uber Driver Partner Emery v. Uber Techs. Inc.*, 2022 WL 1196700 (3d Cir. Apr. 22, 2022) ........................................................................................................................................10

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ....................................................................11

*Williams v. Carson Concrete Corp.*, 2021 WL 1546455 (E.D. Pa. Apr. 20, 2021) ......................5

*Winkworth v. Spectrum Brands, Inc.*, 2020 WL 3574687 (W.D. Pa. June 30, 2020)...................17

*Wright v. Reed*, 2021 WL 912521 (E.D. Pa. Mar. 10, 2021).........................................................10

**State Cases**

*Campisi v. Acme Markets, Inc.*, 915 A.2d 117 (Pa. Super. 2006) ..................................................11

*Farabaugh v. Pa. Turnpike Comm'n*, 590 Pa. 46 (Pa. 2006) .........................................................11

*Krentz v. Consol. Rail Corp.*, 910 A.2d 20 (Pa. 2006) ..................................................................11

*Miller v. Pittsburgh Athletic Co.*, 91 Pa. Super. 241 (1927).........................................................5

*Mulligan v. Crescent Plumbing Supply Co., Inc.*, 845 S.W.2d 589 (Mo. Ct. App. 1992) ...........................................................................................................................................12

*Petrongola v. Comcast-Spectacor, L.P.*, 789 A.2d 204 (Pa. Super. 2001)...................................11

*Vanic v. Ragni*, 435 Pa. 26 (Pa. 1969) ..........................................................................................12

**Federal Statutes**

42 U.S.C. § 1981...........................................................................................................................*Passim*

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ................................................................................ 1, 3-4

Federal Rule of Civil Procedure 12(b)(6) ................................................................................... 1-3

## I.   <u>INTRODUCTION</u>

Plaintiffs allege that Defendants violated their civil rights and are liable for negligence because certain costumed Sesame Street characters allegedly did not personally interact with them during "Meet and Greets" or Parades at Sesame Place Philadelphia ("Sesame Place").  Plaintiffs' claims fail because an admission ticket to Sesame Place provides no contractual right to personal interactions with costumed characters on demand and because Plaintiffs have not alleged that the costumed characters treated them differently than other park guests.  And Plaintiffs' negligence claim fails because Plaintiffs fail to identify any applicable legal duty and make only conclusory allegations about breach without providing any factual support.  Therefore, the entirety of Plaintiffs' Amended Class Action Complaint ("Amended Complaint") must be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  Further, the Amended Complaint's requests for injunctive relief should be dismissed for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1) because the named Plaintiffs do not intend to return to Sesame Place and therefore are not likely to be harmed again in a similar way.

## II.   <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Plaintiffs allege that eight (8) putative class representative families purchased tickets to Sesame Place between December 29, 2021 and July 11, 2022.  Am. Compl. ¶¶ 36, 45, 54, 63, 72, 81, 90, 99.  While at Sesame Place, Plaintiffs allege that the putative class representatives "attempted to participate in a 'Meet and Greet'" or "attempted to participate in a Parade" with costumed characters Elmo, Ernie, Telly Monster, Abby Cadabby, Rosita, Big Bird, Grover, Baby Bear, Zoey, and/or Cookie Monster, but that those characters "refus[ed] to engage with them" and/or "ignor[ed] them."  *Id.* ¶¶ 40, 41, 49, 50, 58, 59, 67, 68, 76, 77, 85, 86, 94, 95, 103, 104.  Plaintiffs further allege, "[u]pon information and belief," that the characters' actions "were

intentional race discrimination," because unidentified "SeaWorld[]¹ performers readily engaged with numerous similarly situated white customers[.]"  *Id.* ¶¶ 43, 52, 61, 70, 79, 88, 97, 106.

Based on these allegations, Plaintiffs bring a putative class action pleading (1) violation of 42 U.S.C. § 1981; and (2) negligence.  They seek, *inter alia*, monetary damages, declaratory relief, and multiple forms of injunctive relief.  Am. Compl. ¶ 130.²

## III.   LEGAL STANDARDS

### A.   Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) must be granted if the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To meet the "facial plausibility" standard, a plaintiff must plead allegations showing "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]"  *Twombly*, 550 U.S. at 555.  While factual allegations are accepted as true, courts disregard "rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements."  *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012).

Based on this standard, the Third Circuit has held that "a court reviewing the sufficiency of a complaint must take three steps.  First, it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim.'"  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting

---

¹ Sesame Place is owned and operated by SeaWorld Parks & Entertainment LLC.  *See id.* ¶ 26.

² Plaintiffs filed their original complaint on July 27, 2022, ECF 1, and filed their Amended Complaint on September 28, 2022, ECF 25, prior to Defendants' October 3, 2022 deadline to respond to the original complaint.  ECF 15.

*Iqbal*, 556 U.S. at 675). "Second, it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Finally, '[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679) (alterations in original).

In ruling on a Rule 12(b)(6) motion, courts consider the complaint, exhibits attached thereto, matters of public record, and undisputedly authentic documents if the complainant's claims are based on those documents. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). In addition, "[d]ocuments that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim." *Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A.)*, 768 F.3d 284, 291 (3d Cir. 2014) (quoting *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002)).

### B. Federal Rule of Civil Procedure 12(b)(1)

A claim for which the plaintiff lacks Article III standing is subject to dismissal for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) ("A motion to dismiss for want of standing is … properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter.").

"It goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) (citations omitted). Article III standing requires, as an "irreducible constitutional minimum," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992), that plaintiffs "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a

3

favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016).

A Rule 12(b)(1) motion for lack of subject matter jurisdiction can be either facial or factual. *Schuchardt v. President of the United States*, 839 F.3d 336, 343 (3d Cir. 2016).  In a facial attack, the court reviews only the allegations of the complaint and the documents referenced therein, and the same standard of review applies as to motions to dismiss for failure to state a claim. *Id.* at 343-44.  To survive a motion to dismiss for lack of standing, "the plaintiff must 'plausibly allege facts establishing each constitutional requirement.'" *Id.* at 344 (quoting *Hassan v. City of New York*, 804 F.3d 277, 289 (3d Cir. 2015)).

In the class context, at least one named plaintiff must have Article III standing. *O'Shea v. Littleton*, 414 U.S. 488, 494-95 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy …, none may seek relief on behalf of himself or any other member of the class." (citations omitted)).

## IV.   THE AMENDED COMPLAINT FAILS TO STATE ANY CLAIM ON WHICH RELIEF CAN BE GRANTED

### A.   The Amended Complaint Fails to State an Actionable Claim for Violation of 42 U.S.C. § 1981

#### 1.   Elements of the Cause of Action

To state a claim under § 1981, "a plaintiff must allege facts in support of the following elements: (1) [that plaintiff] is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute[,] which includes the right to make and enforce contracts." *Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001) (alterations in original) (quotation and citation omitted).  "[A] plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.*

4

*Owned Media*, 140 S. Ct. 1009, 1019 (2020).  "[A] § 1981 plaintiff must first show that he was deprived of the protected right and then establish causation—and [] these two steps are analytically distinct."  *Id.* at 1018.

Section 1981 was not "meant to provide an omnibus remedy for *all* racial injustice." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 479 (2006); *Arguello v. Conoco, Inc.*, 330 F.3d 355, 358-59 (5th Cir. 2003) ("Section 1981 does not provide a general cause of action for race discrimination.").  Rather, it is specifically limited to situations involving contractual rights. *Domino's Pizza*, 546 U.S. at 474 (Section 1981's "specific function" is to "protect[] the equal right of '[a]ll persons … to 'make and enforce **contracts** without respect to race.") (quoting 42 U.S.C. § 1981(a)) (first alteration in original) (emphasis added); *Anjelino v. N.Y. Times Co.*, 200 F.3d 73, 98 (3d Cir. 1999) (a claim under § 1981 "is limited to issues of racial discrimination in the making and enforcing **of contracts**.") (emphasis added); *Williams v. Carson Concrete Corp.*, 2021 WL 1546455, at *5 (E.D. Pa. Apr. 20, 2021) ("Unlike Title VII, which prohibits employers from discriminating on the basis of a protected characteristic, Section 1981 ***applies specifically*** to racial discrimination in the making and enforcement **of contracts**.") (citations omitted) (emphasis added).

### 2.   Plaintiffs Fail to Adequately Allege a Contract

As a preliminary matter, the Amended Complaint does not identify what constitutes Plaintiffs' alleged "contracts."  Assuming, however, that the purported "contracts" are the tickets for admission to Sesame Place, admission tickets are generally found to be licenses, not contracts. *Kennedy Theater Ticket Serv. v. Ticketron, Inc.*, 342 F. Supp. 922, 925-26 (E.D. Pa. 1972) ("Admission tickets have been uniformly defined as revocable licenses …"); *Miller v. Pittsburgh Athletic Co.*, 91 Pa. Super. 241, 243 (1927) ("[T]he privilege granted by the delivery of a ticket of admission to a place of public amusement is a revocable license …").  Thus, Plaintiffs' § 1981

claim can be dismissed for failure to adequately allege the existence of an actual contract.  *See, e.g.*, *Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1309 (11th Cir. 2010) (affirming grant of motion to dismiss § 1981 claim based on suspension of medical staff privileges because medical staff privileges do not constitute a contract).

        3.      Plaintiffs Fail to Adequately Allege a Contractual Right to Personal Interactions with Costumed Characters During "Meet and Greets" or Parades

Even assuming that the Sesame Place admission tickets do constitute "contracts" that could serve as the basis for a § 1981 claim, Plaintiffs' claim still fails.  The Supreme Court has made it clear that a § 1981 plaintiff must have "suffered the ***loss of a legally protected right***."  *Comcast Corp.*, 140 S. Ct. at 1019 (emphasis added); *Domino's Pizza*, 546 U.S. at 479-80 ("[A] plaintiff cannot state a claim under § 1981 unless he has … rights under the existing … contract that he wishes to make and enforce." (quotation omitted)); *see also Paschal v. Billy Beru, Inc.*, 2009 WL 1099182, at *4 (W.D. Pa. Apr. 23, 2009) ("[A] § 1981 claim for interference with the right to make and enforce a contract must involve ***the actual loss of a contract interest***." (emphasis added) (quotation omitted)).  Here, Plaintiffs have not and cannot show that they were deprived of a "legally protected right" because the tickets do not provide a contractual right to on-demand personal interactions by Sesame Street costumed characters during "Meet and Greets," Parades, or in any other capacity. [3]

The named Plaintiffs purchased various admission tickets or season passes to Sesame Place.  *See* Declaration of Brittany Kenny, filed herewith, ¶¶ 3-8 and Exs. 1-5, and 7 thereto.  None

---

[3] The Amended Complaint provides no source of the alleged contractual rights to personal interactions during "Meet and Greets" and Parades other than a reference to admission tickets.  *See e.g.*, Am. Compl. ¶ 111 ("Plaintiffs ***entered into contracts*** with SeaWorld ***by way of their ticketed admission*** to SeaWorld's amusement park Sesame Place Philadelphia[.]") (emphasis added).

of those tickets or season passes includes any language guaranteeing the holder personal, on-demand interactions with costumed characters during "Meet and Greets," Parades, or in any other capacity during a park visit.  *See* Kenny Decl. Exs. 1-7 (Copies of Named Plaintiffs' Tickets to Sesame Place).[4]  In fact, some of the tickets, like those purchased by the Burns family, specifically state that "Park may temporarily close due to capacity limitations.  ***Park*** hours and ***content subject to change without notice***."  Kenny Decl. Ex. 1 (Burns tickets) (emphasis added).  In other words, the ticket does not even guarantee the holder entry to the park, let alone any particular on-demand personal experience *in* the park.  *See also* Kenny Decl. Exs. 2, 3, 4, 7 (Fleming, Morales, Romero, L.W. tickets) ("Admission is not guaranteed.").[5]

Accordingly, Plaintiffs had no legally protected contractual right to on-demand, personal interactions during "Meet and Greets" or Parades, or to any other personal interaction with a costumed character, and their § 1981 claim must fail.  *Comcast Corp.*, 140 S. Ct. at 1019; *Paschal*, 2009 WL 1099182 at \*4; *Lloyd v. Hilton Garden Inn*, 2021 WL 2206291, at \*6 (E.D. Pa. June 1, 2021) (plaintiff brought § 1981 claim against hotel based on hotel's failure to move other hotel guests; court granted motion to dismiss because plaintiff had no right to have the other guests

---

[4] Because the Amended Complaint refers to the named Plaintiffs' tickets, the Court can consider them in ruling on the motion to dismiss without converting it to a motion for summary judgment.  *See Santomenno*, 768 F.3d at 291; *see also Mayer*, 605 F.3d at 229, 231 (considering copy of ticket stub attached to motion to dismiss in affirming dismissal).

[5] Sesame Place has been unable to locate tickets for the Miles or Valette families or for M.L. (child of Katie Valdez) for the dates in the Amended Complaint.  Kenny Decl. ¶ 9.  This could mean that the families did not purchase tickets on those days or that they purchased physical tickets at Sesame Place rather than purchasing their tickets online.  *Id.*  Plaintiffs allege that the Miles family purchased admission tickets on or around June 24, 2022, that the Valette family purchased admission tickets on or around June 20, 2022, and that the Valdez family (including M.L.) purchased admission tickets on or around December 29, 2021.  Am. Compl. ¶¶ 54, 81, 90.  The form language for single day tickets purchased at Sesame Place in December 2021 and June 2022 does not include any right to personal interactions with costumed characters.  *See* Kenny Decl. ¶ 9 and Ex. 8 thereto.

moved and thus no part of the "contractual relationship [was] violated when the hotel chose to not

move [the other guests] to a different hotel room.").

That Plaintiffs allegedly did not receive the personal attention they allegedly desired may

have been disappointing, but case law makes clear that it is not sufficient to state a § 1981 claim.

*See Arguello*, 330 F.3d at 358-59 (affirming judgment as a matter of law for defendant on § 1981

claim because plaintiff "received all she was entitled to under the retail-sales contract … [and thus]

cannot demonstrate any loss recoverable under § 1981.") (citation omitted); *Parker v. Sw. Airlines

Co.*, 406 F. Supp. 3d 1328, 1336 (M.D. Fla. 2019) (plaintiff upset by her treatment by airline failed

to establish a prima facie case for § 1981 claim because she did not establish an "actual thwarting

of her contract rights"; she received what she "contracted for: a safe flight home as booked.");

*O'Haro v. Bob Evans Farms, Inc.*, 2010 WL 4942219, at *8 (M.D. Pa. Oct. 4, 2010) (plaintiffs

failed to establish § 1981 claim against restaurant; "plaintiffs have shown neither that their creation

of a contractual relationship was blocked nor that an existing contractual relationship was

impaired.  All that plaintiffs have established is poor service."); *Bobbitt by Bobbitt v. Rage Inc.*,

19 F. Supp. 2d 512, 518 (W.D.N.C. 1998) (granting motion to dismiss § 1981 claim by customers

who received poor service but "were denied neither admittance to the restaurant nor service, nor

were they asked to leave at any time."); *Lewis v. J.C. Penney Co., Inc.*, 948 F. Supp. 367, 371-72

(D. Del. 1996) (rejecting argument that § 1981 provides remedy for breach of unstated contract

that all who enter a commercial establishment will be treated equally as "such a theory would come

close to nullifying the contract requirement of § 1981 altogether, thereby transforming the statute

into a general cause of action for race discrimination in all contexts").

As the Third Circuit noted in affirming dismissal based on a plaintiff-NFL-ticket-holder's allegation that his contractual expectation to see an "honest" NFL game was violated by the Patriots' cheating:

> [Plaintiff] possessed either a license or, at best, a contractual right to enter Giants Stadium and to have a seat from which to watch a professional football game.  In the clear language of the ticket stub, '[t]his ticket only grants entry into the stadium and a spectator seat for the specific NFL game.'  [Plaintiff] was allowed to enter the stadium and witnessed the 'specified NFL game[s]' … He thereby suffered no cognizable injury to a legally protected right or interest.

*Mayer*, 605 F.3d at 233, 236.  Similarly here, Plaintiffs possessed at most a right to admission to Sesame Place, which they undisputedly received, and the clear language of the ticket/season pass does not provide a contractual right to any personal contact with a Sesame Street character.  Thus no legally protected right was lost.  Accordingly, Plaintiffs' § 1981 claim must be dismissed.

      4.     <u>Plaintiffs Fail to Adequately Allege That Intentional Discrimination Was the But-For Cause of Their Experiences</u>

Even if Plaintiffs had a legally protected right to whatever personal interaction they allegedly did not receive (which they do not), their § 1981 claim should still be dismissed for failure to adequately allege causation.  Causation is required and "analytically distinct" from the alleged deprivation of protected right.  *Comcast Corp.*, 140 S. Ct. at 1018.  To establish causation, the "plaintiff bears the burden of showing that race was a but-for cause of its injury." *Id.* at 1015.  Plaintiffs have failed to do so.

Notably, none of the named Plaintiffs alleges that the costumed characters that allegedly refused to engage with them were actively engaging with similarly situated white children.  Instead, they carefully allege, "upon information and belief," that unnamed, unidentified "SeaWorld performers" engaged with white customers.  For example, Plaintiffs allege that the character Telly Monster allegedly refused to engage with the Fleming family.  Am. Compl. ¶ 50.  They do <u>not</u> allege that Telly Monster was readily engaging with white customers at the time.  *See*

*id*. ¶ 52.  The same is true for all of the other named Plaintiffs—none alleges that the characters that allegedly ignored them were, at the same time, actively engaging with white children.  *Id.* ¶¶ 41, 43, 59, 61, 68, 70, 77, 79, 86, 88, 95, 97, 104, 106.  In other words, Plaintiffs do not allege that they were treated differently than anyone else by the characters that allegedly refused to engage with them.  This is fatal to their § 1981 claim.

Plaintiffs have not alleged facts to demonstrate that they experienced disparate treatment by the at-issue costumed characters, let alone that the characters acted with the required intentional racial animus at the time of the interactions.  *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 383 n.8, 391 (1982) ("§ 1981 can be violated only by intentional discrimination"; disparate impact insufficient).  Accordingly, Plaintiffs "have not nudged their claim[] across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, and their § 1981 claim should be dismissed.  *See, e.g.*, *Uber Driver Partner Emery v. Uber Techs. Inc.*, 2022 WL 1196700, at *2 (3d Cir. Apr. 22, 2022) (affirming dismissal of § 1981 claim where plaintiff "failed to allege facts to suggest that he was treated differently than similarly situated Uber drivers who were not in a protected class."); *Wright v. Reed*, 2021 WL 912521, at *4 (E.D. Pa. Mar. 10, 2021) (plaintiffs failed to adequately allege a § 1981 claim where "the only allegations pertaining in any way to race are that (1) [Plaintiffs] are African American, (2) the Defendant police officers are white, (3) there were several non-African Americans among the group of teenagers at the basketball game; and (4) the teenagers who were arrested are African American.").  Similarly here, Plaintiffs allege that they are members of racial minorities and that they did not receive the attention that they allegedly desired, but that is not sufficient where they have not even alleged that the same characters that allegedly ignored them were at the same time actively engaging with non-minority guests.

For the same reason, the named Plaintiffs do not fall within the class as defined, which is limited to those who "suffered disparate treatment from SeaWorld and/or its agents and/or employees by ignoring minority children *while openly interacting with similarly situated white children*," (Am. Compl. § 108(d)(e) (emphasis added)), and they therefore lack standing to serve as class representatives. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-49 (2011) ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members.") (quoting *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)).

**B.      The Amended Complaint Fails to State an Actionable Claim for Negligence**

1.      Elements of the Cause of Action

Under Pennsylvania law, the elements of a negligence claim are: (1) the existence of a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the breach of duty and the resulting injury; and (4) actual loss or damage. *Krentz v. Consol. Rail Corp.*, 910 A.2d 20, 27 (Pa. 2006). "Whether a duty exists under a particular set of facts is a question of law." *Campisi v. Acme Markets, Inc.*, 915 A.2d 117, 119 (Pa. Super. 2006) (quoting *Petrongola v. Comcast-Spectacor, L.P.*, 789 A.2d 204, 209 (Pa. Super. 2001)). While it is not clear the source of the legal duty that Plaintiffs allege existed and was breached, they appear to base their negligence claim on the fact that they were "business invitees" to Sesame Place and thus were entitled to duties owed to business invitees. Am. Compl. ¶ 125.

2.      Plaintiffs Fail to Plead Breach of Any Duty Owed to Business Invitees

"Pennsylvania courts have adopted the Second Restatement of Torts to determine the duty owed by a possessor of land to an invitee on his or her property." *Speirs v. Marriott Int'l*, 2009 WL 3365877, at *3 (E.D. Pa. Oct. 20, 2009) (citing *Kirschbaum v. WRGSB Assoc.*, 243 F.3d 145, 152 (3d Cir. 2001)); *see also Farabaugh v. Pa. Turnpike Comm'n*, 590 Pa. 46, 59 (Pa. 2006) ("[A]

11

landowner's duty" to business invitees "derives from Section 343 of the Restatement (Second) of Torts."). Under the applicable Restatement section, "a possessor of land is subject to liability for ***physical harm*** caused to invitees by a ***condition on the land***" in certain circumstances. *Speirs*, 2009 WL 3365877 at *3 (citing Restatement (Second) of Torts § 343 (1965)) (emphasis added); *Vanic v. Ragni*, 435 Pa. 26, 32 (Pa. 1969) ("[T]he possessor of land is responsible to business invitees for ***physical harm*** caused by a dangerous ***condition existing on the land*** if he fails to exercise reasonable care to protect them against the danger.") (quotation omitted) (emphasis added).

Here, Plaintiffs have not identified any physical harm that they have allegedly suffered. The plain language of the Restatement, as explicitly adopted by Pennsylvania courts, requires physical harm for a negligence claim by a business invitee against a landowner. Defendants have located no case in which a Pennsylvania state or federal court has ever recognized a duty of landowners to prevent non-physical harm to business invitees (or such a case where a plaintiff even made the argument, given the clarity of the physical harm requirement). Thus, to the extent that Plaintiffs base their negligence claim on the duties owed to business invitees, they fail to state a claim. *See Mulligan v. Crescent Plumbing Supply Co., Inc.*, 845 S.W.2d 589, 591-92 (Mo. Ct. App. 1992) (affirming grant of motion to dismiss plaintiff's negligence claim; holding that landowners have no duty to prevent property loss, only physical harm).

Further, Plaintiffs additionally fail to state such a claim because people (such as employees dressed as Sesame Street characters) do not constitute a "condition on the land," required for a negligence claim premised on the duty of landowners to business invitees. *See Cmty. Ass'n Underwriters of Am., Inc. v. Queensboro Flooring Corp.*, 2016 WL 852520, at *7 (M.D. Pa. Mar.

4, 2016) ("[W]orkers cannot serve as a basis for the imposition of liability against [defendant] under section 343 because their presence does not constitute a condition on the land.").

        3.    <u>Plaintiffs Fail to Otherwise Plead Negligence</u>

Other than the duty owed to business invitees, the Amended Complaint does not identify any other source of an alleged duty recognized by law. The negligence count instead appears to be a re-packaging of Plaintiffs' discrimination claim: because some of its employees allegedly discriminated against Plaintiffs in violation of § 1981,[6] SeaWorld must have been negligent. That is not sufficient. Plaintiffs cannot "borrow" § 1981 for use as evidence to prove negligence. *See Levin v. Dollar Tree Stores Inc.*, 2006 WL 3538964, at *3-4 (E.D. Pa. Dec. 6, 2006) (finding that an alleged violation of federal anti-discrimination statute could not be used as evidence of negligence); *see also Buttermore v. Loans*, 2016 WL 308875, at *5 (W.D. Pa. Jan. 25, 2016) (rejecting complaint's reliance on "the premise that because Caliber's employees allegedly violated the law, it must follow that Caliber was negligent or reckless in hiring them.").

Further, the majority of the count is a list of thirty alleged breaches of an undefined duty. These are all mere conclusory statements devoid of factual support that are not entitled to the presumption of truth and must be disregarded. *Connelly*, 809 F.3d at 789, 790 (as part of motion to dismiss analysis, the Court must "identify those allegations that, being merely conclusory, are not entitled to the presumption of truth," and "affirmatively disregard[] a pleading's legal conclusions.").

---

[6] The Amended Complaint's allegation that the employees allegedly discriminated against Plaintiffs is a legal conclusion not entitled to the presumption of truth on a motion to dismiss. *See Connelly*, 809 F.3d at 790 (allegation that plaintiff's supervisors "subjected her to disparate treatment based on her gender and retaliation for making complaints about discrimination and sexual harassment" was not entitled to the presumption of truth).

For example, Plaintiffs allege a breach based upon "[f]ailing to screen and perform background checks [sic] potential employees to ensure that no employee has a propensity for racial discrimination" and for "[f]ailing to have, enact, follow and enforce policies and procedures for screening potential employees." Am. Compl. ¶ 127(c)(d). But Plaintiffs fail to allege any duty that would require such "propensity" background checks, nor does the Amended Complaint contain any allegations about what kind of background checks or "screenings" were performed, what information allegedly existed pre-hire that should have alerted SeaWorld not to hire any particular individuals, or any other basis to conclude that SeaWorld was negligent in its hiring process. *See Buttermore*, 2016 WL 308875 at *3-4 (granting motion to dismiss negligent hiring claim, stating that plaintiffs must "allege facts that would establish that the employer knew or should have known of a reason not to hire the employee" at the time of hiring, and determining that allegations that employer failed to "properly interview" and "properly supervise" its employees were conclusory statements not entitled to the presumption of truth).

Similarly, Plaintiffs allege a breach based upon "[f]ailing to properly train the employees and managers to recognize incidents of racial discrimination between employees and customers." Am. Compl. ¶ 127(o). Plaintiffs fail to point to any legal duty that would require such "recognition" training, nor any facts regarding what kind of training is provided or what policies and procedures are in place or why they are insufficient. *See Oldham v. Pa. State Univ.*, 2022 WL 1528305, at *24 (W.D. Pa. May 13, 2022) (dismissing claim for negligent training where plaintiff alleged that the defendants failed to provide adequate training, but provided no information about the trainings, who did or did not receive them, or why they were deficient).[7]

_____

[7] The "list of 30" includes multiple other alleged breaches that appear to be re-statements of this alleged failure to properly train. *See* Am. Compl. ¶ 127(e) ("Failing to have, enact, follow and enforce policies and procedures designed to prevent and discourage racial discrimination in

Finally, the "list of 30" contains allegations of affirmative offensive actions that have absolutely no factual support.  For example, it alleges that SeaWorld "[e]nact[ed] policies, practices and/or customs that … rewarded racial discrimination in customer interactions."  Am. Compl. ¶ 127(g).  Which policies are those?  Which rewards are those?  The Amended Complaint does not, and cannot, say.  Similarly, it alleges that SeaWorld "[e]ncourag[ed] racial discrimination against customers."  *Id.* ¶ 127(w).  What affirmative "encouragement" did SeaWorld provide?  Again, on these extremely inflammatory allegations, the Amended Complaint is silent.

None of the "list of 30" is entitled to the presumption of truth, and they must all be disregarded.  Once those conclusory allegations are properly disregarded, there is nothing left.  Plaintiffs have failed to adequately allege a negligence claim, and it should be dismissed.

---

customer interactions"); *id.* ¶ 127(f) ("Failing to train, educate, supervise or inform its employees to avoid racial discrimination in customer interactions"); *id.* ¶ 127(k) ("Failing to have policies and procedures to prevent employees from engaging in racial discrimination"); *id.* ¶ 127(l) ("Failing to use, require and enforce policies and procedures that ensure hiring and training of employees who do not engage in racial discrimination"); *id.* ¶ 127(m) ("Failing to have policies and procedures designed to educate employees about racial discrimination and/or implicit bias"); *id.* ¶ 127(n) ("Failing to use, require and enforce policies and procedures designed to educate employees about racial discrimination and/or implicit bias"); *id.* ¶ 127(p) ("Failing to properly train the employees and managers on how to document and report incident [sic] of racial discrimination between employees and customers"); *id.* ¶ 127(q) ("Failing to properly train the employees and managers to recognize employees who are engaged in racial discrimination of customers"); *id.* ¶ 127(r) ("Failing to adopt, enact, employ and enforce proper and adequate programs, precautions, procedures, measures and plans to prevent racial discrimination between employees and customers"); *id.* ¶ 127(s) ("Failing to adequately plan, plot and implement policies, procedures and responses related to racial discrimination between employees and customers"); *id.* ¶ 127(u) ("Enacting inadequate policies and procedures to prevent or discourage employees from committing acts of racial discrimination against customers").  No matter how many times Plaintiffs say it with slightly different words, they have failed to allege facts to support a negligence claim based on failure to train.

### C.     The Valdez and Willie Families Must Be Dismissed Because They Have Waived Their Right to Participate in Any Form of Class Action

The Valdez and Willie parent-plaintiffs purchased season passes.  *See* Kenny Decl. ¶¶ 7, 8 and Exs. 5 and 7 thereto.  Season passes refer to SeaWorld's EZpay terms and conditions.  Kenny Decl. Exs. 5 and 7.  Those terms and conditions explicitly state:

> Any and all disputes, claims, and causes of action arising out of or connected with this contract or the use of any park or membership **SHALL BE RESOLVED INDIVIDUALLY, WITHOUT RESORT TO ANY FORM OF CLASS ACTION**.

Kenny Decl. Ex. 6 at page 5/7.  Because their claims arise out of "use of" the Sesame Place park, these plaintiffs are required to resolve any such claims on an individual basis.  *Id.*  They cannot "resort to any form of class action."  *Id.*  They therefore should be dismissed from this case—a putative class action for which they can be neither a member nor a representative.  *See, e.g.*, *Korea Week Inc. v. Got Capital, LLC*, 2016 WL 3049490, at *1, *11 (E.D. Pa. May 27, 2016) (finding that named plaintiffs who signed class action waivers cannot serve as class representatives).

## V.     PLAINTIFFS LACK ARTICLE III STANDING FOR INJUNCTIVE RELIEF

Plaintiffs seek four forms of injunctive relief, including, *inter alia*, an order requiring that SeaWorld "evaluate by appropriate psychological testing and behavioral history whether its existing agents and/or employees are racially bigoted" and an order requiring SeaWorld to "implement mandatory educational courses … on the history of discrimination against minority people in America" to be provided by a "nationally acclaimed expert in the field of African and minority History and Culture."  Am. Compl. § 130(d)-(g).

Federal courts have limited jurisdiction.  *Gunn v. Minton*, 568 U.S. 251, 256 (2013).  And a court presumes it lacks jurisdiction "unless the contrary appears affirmatively from the record." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006) (quoting *Renne v. Geary*, 501 U.S. 312, 316 (1991)).  "[A] plaintiff must demonstrate standing separately for each form of relief

sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000);

*Freedom from Religion Found. Inc. v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 480 (3d

Cir. 2016) ("A plaintiff seeking relief must show he or she has standing for each remedy sought."

(citing *Laidlaw*, 528 U.S. at 184)).   "[W]here the claim at issue is one for injunctive relief, 'past

wrongs do not in themselves amount to that real and immediate threat of injury necessary to make

out a case or controversy.'"   *Lundy v. Hochberg*, 91 F. App'x 739, 743 (3d Cir. 2003) (quoting

*Lyons*, 461 U.S. at 103).   Rather, to have standing to seek prospective injunctive relief, "the

plaintiff must show that he is likely to suffer future injury from the defendant's conduct."   *McNair*

*v. Synapse Grp. Inc.*, 672 F.3d 213, 223 (3d Cir. 2012) (internal quotes omitted).

       Here, the named Plaintiffs lack standing to pursue injunctive relief because they have not

alleged that they intend to return to Sesame Place, and thus are not likely to be harmed again in a

similar way.   *McNair*, 672 F.3d at 225 (plaintiffs lacked standing for injunctive relief because they

are not likely to be repeat customers of defendant they believe defrauded them); *In re Johnson &*

*Johnson Talcum Powder Prods. Mktg. Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 293 (3d Cir.

2018) (plaintiff lacked injunctive relief standing because she will not suffer the same alleged injury

now that she knows of the practice from which she is seeking future protection).   Not only do they

not *allege* that they will go back, their allegations make it clear that *they will not*, given that they

now believe that Sesame Place engages in "demeaning racial discrimination" against children that

allegedly caused them damages to their "mental health[] and personal dignity."   *See* Am. Compl.

¶¶ 123, 128.   "[S]peaking generally, the law accords people the dignity of assuming that they act

rationally, in light of the information they possess."   *McNair*, 672 F.3d at 225; *see Winkworth v.*

*Spectrum Brands, Inc.*, 2020 WL 3574687, at *8 (W.D. Pa. June 30, 2020) ("Plaintiffs have not

alleged that they will sustain future injury.   Moreover, given their allegations that the Hot Rollers

are defective … it is unreasonable to assume that Plaintiffs would sustain future injury by repurchasing the Hot Rollers" and dismissing request for injunctive relief); *Silva v. Rite Aid Corp.*, 416 F. Supp. 3d 394, 400 (M.D. Pa. 2019) (granting motion to dismiss request for injunctive relief and declining to allow plaintiff to amend to add allegations of future intent to re-purchase allegedly offending product because "[w]hen an individual suffers an injury and subsequently becomes aware of the cause of that injury, the law affords the individual the dignity of assuming that they will not act in a manner which results again in the same injury.").

Since there is not a sufficient likelihood that named Plaintiffs will again be wronged in a similar way, they are not entitled to seek injunctive relief, on behalf of themselves or the class. *Lyons*, 461 U.S. 111 ("Absent a sufficient likelihood that he will again be wronged in a similar way, Lyons is no more entitled to an injunction than any other citizen"); *McNair*, 673 F.3d at 223-27 (because named plaintiffs lacked standing for injunctive relief, they could not pursue injunctive relief on behalf of class); *see also Goldstein v. Home Depot U.S.A., Inc.*, 609 F. Supp. 2d 1340, 1348 (N.D. Ga. 2009) (former customer of defendant who did not allege "that he plans in the future to purchase a Dryer from Defendant" lacked standing to seek injunctive relief on behalf of class of consumers who might be subjected to the allegedly illegal practice). Accordingly, the claims for injunctive relief must be dismissed and Plaintiffs should not be able to pursue a Rule 23(b)(2) injunctive relief class.

## VI.   **CONCLUSION**

For the foregoing reasons, the SeaWorld Defendants respectfully request the Court grant their Motion to Dismiss and dismiss the Amended Complaint in its entirety.

Dated: November 2, 2022                     Respectfully submitted,

                                            **DUANE MORRIS LLP**

                                            */s/ Leigh M. Skipper*
                                            Leigh M. Skipper (PA #49239)
                                            Aleksander W. Smolij (PA #329521)
                                            30 South 17th Street
                                            Philadelphia, PA 19103
                                            Tel.: (215) 979-1157
                                            Fax: (215) 689-4939
                                            lmskipper@duanemorris.com
                                            awsmolij@duanemorris.com

                                            Michelle C. Pardo (*admitted pro hac vice*)
                                            John M. Simpson (*admitted pro hac vice*)
                                            Rebecca E. Bazan (*admitted pro hac vice*)
                                            901 New York Avenue NW, Suite 700 East
                                            Washington, DC 20001
                                            Tel.: (202) 776-7844
                                            Fax: (202) 478-2563
                                            mcpardo@duanemorris.com
                                            jmsimpson@duanemorris.com
                                            rebazan@duanemorris.com

                                            *Attorneys for SeaWorld Parks & Entertainment, Inc.*
                                            *and SeaWorld Parks & Entertainment LLC*