**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **QUINTON BURNS,** *et al.*, | : |
| | : |
| **Plaintiffs,** | : |
| | : |
| **v.** | : **CIVIL ACTION** |
| | : |
| **SEAWORLD PARKS &** | : **NO. 22-cv-02941** |
| **ENTERTAINMENT, INC.; and** | : |
| **SEAWORLD PARKS &** | : |
| **ENTERTAINMENT LLC,** | : |
| | : |
| **Defendants.** | : |
| | : |

## DEFENDANTS' MOTION FOR RECONSIDERATION

Defendants SeaWorld Parks & Entertainment, Inc. and SeaWorld Parks & Entertainment LLC (collectively "Defendants") move pursuant to Local Rule of Civil Procedure 7.1(g) for reconsideration of the Court's October 5, 2023 Order (ECF 82) and October 5, 2023 telephonic ruling regarding Defendants' ability to interview individuals that Plaintiffs' proffered expert interviewed and extension of time in which to respond to Plaintiffs' expert reports. This motion is supported by the accompanying Memorandum of Law, which is being filed contemporaneously and which Defendants incorporate by reference.

Dated: October 19, 2023                    Respectfully submitted,

**DUANE MORRIS LLP**

*/s/ Leigh M. Skipper*
Leigh M. Skipper (PA #49239)
Aleksander W. Smolij (PA #329521)
30 South 17th Street
Philadelphia, PA 19103
Tel.: (215) 979-1157
Fax: (215) 689-4939
lmskipper@duanemorris.com
awsmolij@duanemorris.com

Michelle C. Pardo (*admitted pro hac vice*)
John M. Simpson (*admitted pro hac vice*)
Rebecca E. Bazan (*admitted pro hac vice*)
901 New York Avenue NW, Suite 700 East
Washington, DC 20001
Tel.: (202) 776-7844
Fax: (202) 478-2563
mcpardo@duanemorris.com
jmsimpson@duanemorris.com
rebazan@duanemorris.com

*Attorneys for SeaWorld Parks & Entertainment, Inc.*
*and SeaWorld Parks & Entertainment LLC*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **QUINTON BURNS,** *et al.*, | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION** |
| | : | |
| **SEAWORLD PARKS &** | : | **NO. 22-cv-02941** |
| **ENTERTAINMENT, INC.; and** | : | |
| **SEAWORLD PARKS &** | : | |
| **ENTERTAINMENT LLC,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RECONSIDERATION

## TABLE OF CONTENTS

I.     INTRODUCTION ...........................................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND..........................................................1

III.   LEGAL STANDARD....................................................................................................4

IV.    DEFENDANTS REQUEST THAT THE COURT RECONSIDER ITS RULINGS
       BARRING REBUTTAL EXPERT INTERVIEWS AND TIMING OF
       REBUTTAL EXPERT REPORTS TO PREVENT MANIFEST INJUSTICE..................4

V.     CONCLUSION...........................................................................................................11

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*In re Anthanassious*, 418 F. App'x 91 (3d Cir. 2011) .......................................................4

*Bowman v. Colomer*, 2011 WL 3812583 (W.D. Pa. Aug. 29, 2011) .......................... 6-8

*Fed. Trade Comm'n v. Innovative Designs, Inc.*, 2018 WL 3611510 (W.D. Pa. July 27, 2018)........................................................................................................5

*Glaxosmithkline LLC v. Glenmark Pharms. Inc.*, 2017 WL 11685418 (D. Del. Jan. 20, 2017)......................................................................................................10

*Martin v. Buono*, 2021 WL 1424711 (E.D. Pa. Apr. 15, 2021)....................................9

*Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quiniteros*, 176 F.3d 669 (3d Cir. 1999) ..............................................................................................................4

*Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894 (3d Cir. 1977)...............6, 11

*Nat'l Med. Imaging, LLC v. U.S. Bank N.A.*, 2019 WL 9809616 (E.D. Pa. Jan. 31, 2019) ........................................................................................................5

*Newill v. Campbell Transp. Co., Inc.*, 2015 WL 652592 (W.D. Pa. Jan. 14, 2015)................... 7-8

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994) .....................................7

*Sultan v. AIG Cas. Ins.*, 2023 WL 3060767 (E.D. Pa. Apr. 24, 2023) ......................7, 9

*ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254 (3d Cir. 2012).....................................6

**Other Authorities**

Black's Law Dictionary (7th ed.)..................................................................................5

Fed. R. Civ. P. 26(a)(2)(D)(ii) ..............................................................................5, 10

Fed. R. Civ. P. 54(b) ...................................................................................................4

Local Rule 7.1(g) ........................................................................................................4

## I.     <u>INTRODUCTION</u>

Defendants submit this Motion for Reconsideration of the Court's October 5, 2023 ruling and Order that (1) Defendants' rebuttal expert is barred from interviewing any of the twenty-two individuals interviewed by Plaintiffs' expert and (2) any rebuttal reports to Plaintiffs' expert reports were due no later than October 16, 2023.  ECF 82.  Defendants' Motion is also necessary to make a record for appeal, particularly because the expedited nature of the dispute did not allow for full, on the record briefing, and the telephonic conference was not transcribed.

Defendants respectfully request that the Court reconsider its rulings to prevent manifest injustice.  These rulings practically result in the exclusion of a rebuttal expert.  Defendants will be severely prejudiced if their rebuttal expert is unable to conduct interviews of any of the twenty-two individuals interviewed by Plaintiffs' expert (some of whom are not plaintiffs and were not disclosed in Plaintiffs' initial disclosures as people with discoverable knowledge) and does not have sufficient time to respond to Plaintiffs' expert's extensive reports.  As the Third Circuit has held, exclusion of expert testimony is an extreme sanction, particularly where, as here, there is no prejudice to the challenging party.  Plaintiffs will not be prejudiced in any way if Defendants' rebuttal expert is allowed to conduct rebuttal interviews and prepare full reports.  The trial date is still seven (7) months away, and would not be impacted by the time required to allow Defendants to submit full rebuttal expert reports.  Defendants therefore respectfully request that the Court grant their rebuttal expert permission to interview the individuals that Plaintiffs' expert interviewed in preparing his nine reports and the additional time necessary to prepare rebuttal expert reports incorporating those interviews.

## II.     <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Pursuant to the February 10, 2023 Scheduling Order, affirmative expert reports were due "no later than September 25, 2023," and rebuttal expert reports, "intended solely to contradict or

rebut evidence on the same subject matter identified by another party," were due "no later than October 9, 2023."  ECF 36.

On September 25, 2023, Plaintiffs submitted a partial expert disclosure that identified Dr. Michael Lindsey as an affirmative expert and included Dr. Michael Lindsey's expert reports for six of the Plaintiff families and a report for the family of a non-plaintiff, Makeda Bryan.[1]  Those reports state that Dr. Lindsey conducted all of his interviews of Plaintiffs after the fact discovery cut off of September 11, 2023.  *See* Ex. 1 hereto, Declaration of A. Ismail ("Ismail Decl.") at ¶ 3. It is undisputed that those reports were incomplete, because Dr. Lindsey had not conducted interviews or prepared reports for two of the Plaintiff families by the affirmative expert deadline of September 25, 2023.

On September 27, 2023, Defendants contacted Plaintiffs noting it would not be possible for Defendants' rebuttal expert to meet the October 9, 2023 rebuttal expert deadline given that Plaintiffs' expert reports were not yet completed and the need for Defendants' rebuttal expert to conduct interviews.  Ex. 2 hereto.  Because other case management deadlines in the Scheduling Order would likely also have to be adjusted given a few outstanding discovery disputes, Defendants requested that Plaintiffs agree to a stipulation holding the remaining deadlines in the Scheduling Order in abeyance until resolution of outstanding discovery disputes, after which point the parties would submit a proposed amended scheduling order.  *Id*.  Plaintiffs did not respond to this request for five days.

On October 2, 2023, Plaintiffs produced reports from Dr. Lindsey for the two remaining Plaintiff families.  In total, Dr. Lindsey interviewed twenty-two individuals.  Ismail Decl. ¶ 3.

---

[1] Ms. Bryan has never been a plaintiff, but was identified by Plaintiffs on their initial witness disclosure list.  Plaintiffs have not explained why their expert interviewed the Bryan family.

These included named Plaintiffs, as well as other family members of the Plaintiff families, some of whom were not present for the alleged incidents. *Id.* The nine expert reports submitted total 320 pages. *Id.* Dr. Lindsay cited to 197 publications as materials he ostensibly relied upon in preparing his reports. *Id.*

On the evening of October 2, 2023, Plaintiffs responded to Defendants' September 27th email and asserted that they were not willing to hold the remaining deadlines in abeyance, and that Defendants were not entitled to produce rebuttal experts when they had not previously designated affirmative experts. Ex. 3 hereto.

Given the looming rebuttal report deadline, the next day, October 3, 2023, Defendants sent a letter to the Court requesting the Court's intervention in the matter because it was "not feasible for Defendants to conduct their own interviews of these individuals and prepare rebuttal expert reports in one week." Ex. 4 hereto at 1-2. Both the need for independent interviews and the sheer length and breadth of the reports meant that Defendants' expert—an active clinician—could not feasibly respond to in one to two weeks. *See* Ismail Decl. at ¶ 4. Because of the exigency of the timing, Defendants availed themselves of the Court's expedited dispute resolution procedures of short letters to Chambers requesting a telephone conference as there was insufficient time to file a formal motion and brief on the docket.

The Court held a telephone conference on the issue on October 5, 2023. During that conference, the Court ruled that Defendants' rebuttal expert would not be permitted to conduct interviews of the twenty-two individuals interviewed by Plaintiffs' expert, and that Defendants would receive an extension of one week to file any rebuttal expert reports—until October 16, 2023. Later that day, the Court entered an Order memorializing the ruling that "any expert report intended

solely to contradict or rebut evidence on the same subject matter identified by another party is now due no later than October 16, 2023."  ECF 82.

### III.   LEGAL STANDARD

Eastern District of Pennsylvania Local Rule 7.1(g) allows for a party to move for reconsideration "within fourteen (14) days after the entry of the order concerned." Reconsideration may be granted upon a demonstration of: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [ruled]; or (3) the need to correct a clear error of law or fact **or to prevent manifest injustice**."  *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quiniteros*, 176 F.3d 669, 677 (3d Cir. 1999) (emphasis added).   Further, judges have "the discretion to reconsider an issue and should exercise that discretion whenever it appears that a previous ruling, even if unambiguous, might lead to an unjust result."  *In re Anthanassious*, 418 F. App'x 91, 95 (3d Cir. 2011) (quoting *Swietlowich v. Bucks County*, 610 F.2d 1157, 1164 (3d Cir. 1979)); *see also* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment . . . ").

### IV.   DEFENDANTS REQUEST THAT THE COURT RECONSIDER ITS RULINGS BARRING REBUTTAL EXPERT INTERVIEWS AND TIMING OF REBUTTAL EXPERT REPORTS TO PREVENT MANIFEST INJUSTICE

Plaintiffs' expert, Dr. Lindsey, provided reports opining about Plaintiffs' alleged injuries/damages.  Because Plaintiffs have the burden of proof regarding injury and damages, to the extent Plaintiffs wish to rely on expert testimony on those subjects, they were required to submit *affirmative* expert reports.  Any response by Defendants' expert on the issue of Plaintiffs' injuries and damages is by definition rebuttal.  Rebuttal evidence is "[e]vidence offered to disprove or contradict the evidence presented by an opposing party."  Black's Law Dictionary (7th ed.).

Thus, Federal Rule of Civil Procedure 26 recognizes that rebuttal expert reports are intended "to contradict or rebut evidence on the same subject matter identified by another party" in its expert disclosures.  Fed. R. Civ. P. 26(a)(2)(D)(ii).

Defendants seek reconsideration of the Court's ruling that their rebuttal expert is not permitted to interview the same witnesses Plaintiffs' expert interviewed—including the named Plaintiffs.  Such interviews are properly part of a rebuttal expert report.  Defendants seek to introduce rebuttal testimony on the same points addressed by Plaintiffs' expert—the emotional impact of the events alleged in the Amended Complaint on Plaintiffs.  Defendants wish to rebut Plaintiffs' proffered expert testimony that Plaintiffs will be required to seek psychological treatment as a result of the events in the Amended Complaint.  Defendants are, therefore, seeking to address the same topics as those addressed in Plaintiffs' expert reports.  *See Fed. Trade Comm'n v. Innovative Designs, Inc.*, 2018 WL 3611510, at *3 (W.D. Pa. July 27, 2018) (courts interpreting the phrase "same subject matter" have held that this means that "a rebuttal report [must] simply address the same **topic** as the affirmative report, as opposed to the same topic *and* methodology the affirmative expert relied on.") (collecting cases) (emphasis added).  But in order to do so, Defendants' expert needs to probe and assess—with the interviewees—the very questions and answers given during Plaintiffs' expert's interviews.  *See* Ismail Decl. at ¶ 4.  Moreover, Dr. Lindsey's decision to interview additional individuals who had no percipient knowledge of the incidents together in the same interview sessions with the Plaintiffs (including children) created another dynamic that Defendants' expert needs to analyze and rebut, and was a factor unknown to Defendants at the time affirmative expert disclosures and reports were due.  That Defendants' expert would conduct her own interviews does not negate the rebuttal nature of the exercise. "Courts have . . . allowed expert rebuttal reports that 'cite new evidence and data so long as the

new evidence and data is offered to directly contradict or rebut the opposing party's expert.'" *Nat'l Med. Imaging, LLC v. U.S. Bank N.A.*, 2019 WL 9809616, at \*2 (E.D. Pa. Jan. 31, 2019) (quoting *Am. Diabetes Ass'n v. Friskney Fam. Trust, LLC*, 2015 WL 12826476, at \*2 (E.D. Pa. July 21, 2015)).

Defendants are not seeking to inject new defenses into this case, but are only attempting to present testimony that directly rebuts the points raised in Plaintiffs' expert reports regarding the psychological impact of the events on Plaintiffs.  Plaintiffs' expert reports rely extensively on interviews with twenty-two individuals.  If Defendants' rebuttal expert cannot interview those individuals, Defendants will not be able to present a complete rebuttal report that independently evaluates the mental state of those individuals.  This negative impact on Defendants' ability to present rebuttal expert testimony would work a manifest injustice on their ability to defend this case.

The Third Circuit recognizes that "exclusion of critical evidence is an 'extreme' sanction," *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 297 (3d Cir. 2012), and applies a five-factor test to determine whether such exclusion is appropriate:

> (1) 'the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified' or the excluded evidence would have been offered; (2) 'the ability of that party to cure the prejudice'; (3) the extent to which allowing such witnesses or evidence would 'disrupt the orderly and efficient trial of the case or of other cases in the court'; (4) any 'bad faith or willfulness in failing to comply with the court's order'; and (5) the importance of the excluded evidence.

*Id.* at 298 (quoting *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977)).  *In ZF Meritor*, the Third Circuit applied the *Pennypack* factors to the district court's "exercise of discretion to control the discovery process and [] refusal to allow submission of additional [expert] evidence," and determined that the district court abused its discretion in doing so.  *Id.* at 298-300.

Similarly here, the five-factor *Pennypack* test supports Defendants' request for reconsideration. Courts heavily weigh the first and second factors regarding prejudice and ability to cure. *Bowman v. Colomer*, 2011 WL 3812583, at *1 (W.D. Pa. Aug. 29, 2011). Here, there would be no prejudice to Plaintiffs if Defendants' expert were able to interview the witnesses Plaintiffs' expert interviewed and incorporate those into full reports. In fact, during the telephonic conference, Plaintiffs' counsel indicated that they would not have objected to the interview of the twenty-two individuals by Defendants' expert had the interviews been completed *before* September 25, 2023. That alone underscores that Plaintiffs understand that it is typical for both plaintiff and defendant expert witnesses to conduct separate interviews of individuals with alleged psychological or emotional injuries. Plaintiffs' belief that such an exercise should have occurred in connection with an *affirmative* expert rather than a *rebuttal* expert does not amount to prejudice, particularly given the Third Circuit's view on timeliness of expert reports generally.[2] Here, the interviews Defendants' expert seeks are not coming on the eve of trial. Dispositive and *Daubert* motions are not yet due, and there are more than seven months before the May 2024 scheduled trial. Plaintiffs have argued that allowing Defendants' expert to conduct interviews in the rebuttal phase would prevent them from submitting their own rebuttal to that expert. However, it is well

---

[2] Third Circuit Courts have refused to strike expert reports and rebuttal reports filed up to a year or more after the expert disclosure deadline set in a scheduling order. *See Sultan v. AIG Cas. Ins.*, 2023 WL 3060767, at *1 (E.D. Pa. Apr. 24, 2023) (refusing to strike expert report filed over a year after the expert disclosure deadline); *Bowman*, 2011 WL 3812583, at *1 (refusing to strike rebuttal expert report by expert designated two weeks after expert disclosure deadline); *Newill v. Campbell Transp. Co., Inc.*, 2015 WL 652592, at *2 (W.D. Pa. Jan. 14, 2015) (refusing to strike expert report filed two weeks after 30-day rebuttal expert window prescribed by the Federal Rules because defendants were not prejudiced by delay when they received the report four months before trial and prior to deposing expert witnesses). The Third Circuit has held that exclusion of expert testimony filed after an expert report deadline can be a reversible error under the abuse of discretion standard. *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 793 (3d Cir. 1994) (reversing district court's exclusion of expert report disclosed a month after the scheduling order deadline).

within the Court's discretion to adjust deadlines so that Plaintiffs can respond to Defendants' expert.  Thus, there is no actual prejudice to Plaintiffs to allowing Defendants' expert to interview the witnesses and prepare full reports, and certainly none that could not be cured well in advance of trial by a rebuttal report and a deposition of Defendants' expert (that has been discussed but not yet scheduled).  *See Bowman*, 2011 WL 3812583, at *1; *Newill*, 2015 WL 652592, at *2.

Under the third factor, allowing Defendants' expert to conduct interviews and prepare full reports would not disrupt the orderly and efficient trial of this case because more than seven months remain until trial and Defendants' expert is limited to rebuttal only.  As noted by the court in *Bowman*, rebuttal testimony "should not be time consuming," 2011 WL 3812583, at *1, and this factor weighs in favor of admitting untimely expert testimony.

The fourth factor—lack of bad faith—likewise weighs in favor of Defendants' request.  As soon as Plaintiffs disclosed their expert witness on injuries/damages, Defendants worked expeditiously to attempt to reach an agreement regarding rebuttal interviews and reports without involving the Court.  There was no deadline specified in the scheduling order that would have provided Defendants with notice that a rebuttal expert's interview of witnesses needed to occur before the close of fact discovery (September 11, 2023) or the deadline for affirmative expert reports (September 25, 2023).  As previously stated, Dr. Lindsey interviewed the Plaintiff families *after* the close of fact discovery, as is expected, since this is an activity of an expert witness, conducted during the expert phase of discovery.  Prior to Dr. Lindsey's interviews, which generated questions and answers not previously disclosed in fact discovery and involving the dynamic of *additional* family members not participating as plaintiffs in the lawsuit, Defendants' expert could not adequately rebut his findings or opinions or even have access to the interview facts underlying the opinions (or even all of the interviewees themselves).  In particular, the

8

addition of non-parties to the interviews—some of whom *were not even present for the alleged incidents*—changes the entire dynamic of the interview and the interviewee's responses and potentially undermine the entirety of Dr. Lindsey's findings and opinions. This is something that was not presented prior to Dr. Lindsey's interviews and is properly within the range of analysis that Defendants' expert needs to do to properly rebut his opinions. In short, until Plaintiffs' expert disclosures on September 25 and October 2, 2023 of Dr. Lindsey's identity,[3] the topics he would opine on, the information he would rely on, and the substance of his opinions, including the unique dynamic of the "group" psychological interviews, Defendants were unable to retain an expert who could provide rebuttal testimony on the same topics covered in Dr. Lindsey's reports. Defendants' expert could not rebut what had not yet existed.[4] As soon as the infeasibility of the rebuttal expert report deadline became apparent, Defendants used their best efforts to find a solution that would not prejudice Plaintiffs or involve the Court, but Plaintiffs refused. Defendants have not acted in bad faith.

The fifth factor—importance of the evidence—also weighs in Defendants' favor because the rebuttal expert evidence is critical to defending this case. Without a rebuttal expert who can interview Plaintiffs' expert's interviewees and properly incorporate those interviews into full rebuttal expert reports, Defendants will be unable to present an expert to counter Plaintiffs' expert testimony to the jury in this case. Because Defendants' rebuttal expert would address "key

---

[3] As stated during the telephonic call with the Court, Plaintiffs' contention that Dr. Lindsey was disclosed as an expert during Makeda Bryan's deposition is incorrect. Ms. Bryan—who is not a Plaintiff—only testified that she saw a Dr. Lindsey for *treatment* for mental health symptoms; she did not disclose that he was an expert for Plaintiffs. Ex. 5 hereto (Deposition of Makeda Bryan) at 83:12-84:9. Defendants were not aware that Plaintiffs had retained Dr. Lindsey to interview twenty-two individuals and write nine expert reports in advance of the expert disclosure deadline.

[4] Defendants are willing to modify their request to interview only those individuals who are participating as Plaintiffs in this case and/or seek to become plaintiffs in this case.

elements" of this case, the Court should reconsider its rulings.  *See Sultan*, 2023 WL 3060767, at *3; *see also Martin v. Buono*, 2021 WL 1424711, at *8-9 (E.D. Pa. Apr. 15, 2021) (granting motion to extend expert discovery, even where the moving party lacked good cause, because the party "would be severely prejudiced if he were not given the opportunity to provide an expert report"); *Glaxosmithkline LLC v. Glenmark Pharms. Inc.*, 2017 WL 11685418, at *5, *10 (D. Del. Jan. 20, 2017) (refusing to strike untimely expert evidence, noting that because exclusion of expert evidence "is an extreme sanction," it "should not be imposed where an untimely or improper disclosure amounts to only a slight deviation from pre-trial notice requirements or occasions only slight prejudice," but instead "should be reserved for circumstances amounting to willful deception or flagrant disregard of a court order by the proponent of the evidence." (internal citations and quotations omitted)).

Finally, Defendants also request that the Court reconsider its October 16, 2023 deadline for rebuttal expert reports because, even excluding Defendants' expert's ability to conduct her own interviews, denying Defendants' expert additional time to respond to what was included in the nine expert reports would result in manifest injustice to Defendants.  The Court's October 16 rebuttal expert report deadline was three weeks after Plaintiffs' seven timely reports and two weeks after Plaintiffs' two untimely reports.  Defendants could not retain a rebuttal expert with the credentials appropriate to rebut Dr. Lindsey's opinions or provide that expert with Dr. Lindsey's materials to begin writing a rebuttal report on "the same subject matter" identified by Plaintiffs until they were provided with that subject matter on September 25 and October 2.  Fed. R. Civ. P. 26(a)(2)(D)(ii), *see also* ECF 36.  Defendants' expert, a practicing psychiatrist, was not able to obtain and review the 197 sources that Dr. Lindsey utilized in forming his opinions and analyze and draft adequate rebuttal reports to the 320 pages of Dr. Lindsey's reports, given their length and scope, by October

16, even excluding the need for and scheduling of psychiatric interviews. *See* Ismail Decl. at ¶¶ 3, 4. Without sufficient time to respond to nine reports, the Court's rulings effectively denied Defendants the ability to present a rebuttal expert witness. The same *Pennypack* factors apply to this portion of the Court's ruling (lack of prejudice given seven months before trial, no bad faith or willfulness, and importance of expert testimony to the case). Defendants respectfully request that the Court reconsider its October 16 deadline and provide them with additional time to coordinate with their rebuttal expert to adequately respond to all nine of Plaintiffs' expert reports. The abbreviated deadline would result in manifest injustice to Defendants who, despite their best efforts, cannot adequately prepare rebuttal expert reports and would be left without expert testimony countering Plaintiffs' expert.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request the Court reconsider its rulings barring Defendants' rebuttal expert from interviewing the individuals interviewed by Plaintiffs' proffered expert and Order that rebuttal expert reports must be filed by October 16, 2023, and grant Defendants thirty (30) days from the date of the Court's order deciding this Motion to submit full rebuttal expert reports.

Dated: October 19, 2023                     Respectfully submitted,

                                            **DUANE MORRIS LLP**

                                            */s/ Leigh M. Skipper*
                                            Leigh M. Skipper (PA #49239)
                                            Aleksander W. Smolij (PA #329521)
                                            30 South 17th Street
                                            Philadelphia, PA 19103
                                            Tel.: (215) 979-1157
                                            Fax: (215) 689-4939
                                            lmskipper@duanemorris.com
                                            awsmolij@duanemorris.com

                                            Michelle C. Pardo (*admitted pro hac vice*)
                                            John M. Simpson (*admitted pro hac vice*)
                                            Rebecca E. Bazan (*admitted pro hac vice*)
                                            901 New York Avenue NW, Suite 700 East
                                            Washington, DC 20001
                                            Tel.: (202) 776-7844
                                            Fax: (202) 478-2563
                                            mcpardo@duanemorris.com
                                            jmsimpson@duanemorris.com
                                            rebazan@duanemorris.com

                                            *Attorneys for SeaWorld Parks & Entertainment, Inc.*
                                            *and SeaWorld Parks & Entertainment LLC*

**<u>CERTIFICATE OF SERVICE</u>**

I, Leigh M. Skipper, certify that a true and correct copy of the foregoing Defendants'

Motion for Reconsideration was served using the CM/ECF system, which will send notification

of such filing to counsel and parties of record electronically on October 19, 2023.


*/s/ Leigh M. Skipper*
Leigh M. Skipper