IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **QUINTON BURNS** *et al.*,<br>                    **Plaintiffs,**<br><br>          v.<br><br>**SEAWORLD PARKS &**<br>**ENTERTAINMENT, INC., SEAWORLD**<br>**PARKS & ENTERTAINMENT, LLC AND**<br>**JOHN DOES 1,2,3 AND 4,**<br>                    **Defendants.** | **CIVIL ACTION**<br><br><br><br><br>**NO.  22-2941** |

<u>**OPINION**</u>

Plaintiffs move for leave to amend their First Amended Complaint, Fed. R. Civ. P.

15(a)(2), 16(b)(4), to reflect the broader proposed class that they seek to certify in their Motion

for Class Certification and to include a negligent supervision claim that previously was

dismissed without prejudice.  *Burns v. SeaWorld Parks & Ent., Inc.*, 2023 WL 3821810, at *11

(E.D. Pa. June 5, 2023).  For the reasons that follow, that motion will be granted in part and

denied in part.[1]

**I.       BACKGROUND**

This case arises out of allegations of racial discrimination at Defendant SeaWorld Parks

& Entertainment, Inc.'s ("SeaWorld") amusement park Sesame Place Philadelphia ("Sesame

Place") in Langhorne, Pennsylvania.  Plaintiffs' First Amended Complaint alleged violations of

---

[1] As a preliminary matter, Plaintiffs' Motion proposing a broader class need not be analyzed under Rules 15 and 16 because "modification of a class definition is contemplated by the Federal Rules of Civil Procedure, *see* Fed. R. Civ. P. 23(c)(1), and a court 'is not bound by the class definition proposed in the complaint.'"  *Gates v. Rohm and Haas Co.*, 265 F.R.D. 208, 215 n.10 (E.D. Pa. 2010), *aff'd*, 655 F.3d 255 (3d Cir. 2011) (quoting *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993)); *see also Weisfeld v. Sun Chem. Corp.*, 84 F. App'x 257, 259 (3d Cir. 2004) (not precedential) (relying on the same principle).  Accordingly, Plaintiffs may proceed using the proposed class on which class certification briefing already has been filed, and only Plaintiffs' proposed addition of the negligent supervision claim is at issue here.

42 U.S.C. § 1981 and negligence.[2]  In partially granting SeaWorld's Motion to Dismiss, the

Court disaggregated Plaintiffs' negligence claim based on the various theories asserted, one

being a claim for negligent supervision.  *Burns*, 2023 WL 3821810, at *7.  Such a claim requires

proof that: (1) the defendant "fail[ed] to exercise ordinary care to prevent an intentional harm by

an employee acting outside the scope of his employment;" (2) the harm took place on the

employer's premises; and, (3) the employer "knows or has reason to know of the necessity and

ability to control the employee."  *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 487-88 (3d

Cir. 2013) (citations omitted).  This claim was dismissed without prejudice, *Burns*, 2023 WL

3821810, at *11, and only Plaintiffs' Section 1981 and negligence *per se* claims proceeded to

discovery, *id.* at *13.

        The Second Amended Complaint differs from its predecessor in two important respects.

First, in its operative Complaint, Plaintiffs identify thirty distinct alleged breaches of SeaWorld's

duty not to violate their civil rights as part of an overarching claim for "negligence" (ECF No. 25

at 22).  Several of these allegations touched lightly on the elements of a negligent supervision

claim.  *Id.* at 23 (Am. Compl. ¶ 127(c)-(f)).  The Second Amended Complaint replaces these

conclusory allegations with deposition testimony from current and former SeaWorld employees

with varying levels of seniority who were able to describe Sesame Place's hiring relationship

with high schools in Bucks County, Pennsylvania, the park's recruiting and training practices,

and the volume of complaints about discrimination that the park was receiving (ECF No. 123-1

at 24-29).  Second, Plaintiffs' proposed Second Amended Complaint includes a broader range of

allegations of racial discrimination.  In addition to the allegations that employees portraying

Sesame Street characters refused to interact with the Named Plaintiffs' children because of their

---

[2] Plaintiffs filed their original complaint on July 27, 2022 (ECF No. 1) and filed their operative First Amended Complaint on September 28, 2022 (ECF No. 25).

race, Plaintiffs allege that SeaWorld received complaints about discrimination across "all aspects of the park, including swimming pools, park water rides, park amusement rides, park parades, park staff assistance, and park food concession lines." *Id.* at 27 (Second Am. Compl. ¶ 130(n)).

## II.   DISCUSSION

### A.  Good Cause Under Rule 16(b)(4)

First, because granting leave to amend would require modifying the scheduling order in this case—albeit slightly—the moving party must establish "good cause" for the amendment. Fed. R. Civ. P. 16(b)(4); *Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020). The "good cause" inquiry "depends in part on a plaintiff's diligence." *Premier Comp Sols.*, 970 F.3d at 319 (citing *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84-85 (3d Cir. 2010); *E. Mins. & Chems. Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir. 2010)).  In that the facts supporting the amendment were recently disclosed, there is good cause to allow the proposed amendment.  *Rogers v. Wilmington Tr. Co.*, 2022 WL 621690, at *6 & n.47 (3d Cir. Mar. 3, 2022), *cert. denied*, 143 S. Ct. 406 (2022) (not precedential); *accord Harris v. FedEx Nat'l LTL, Inc.*, 760 F.3d 780, 786 (8th Cir. 2014).

Specifically, Plaintiffs maintain that they have learned through discovery information that will "allow[] them to cure deficiencies in their previously dismissed claim for negligent supervision."  SeaWorld characterizes their Motion as focusing solely on whether there is new evidence that their employees were acting outside the scope of employment and argues that no such evidence has been identified.  Indeed, the Court dismissed their negligent supervision claim without prejudice for failure to plausibly plead that element. *Burns*, 2023 WL 3821810, at *11. But, as mentioned above, that was far from the only problem with the original negligent supervision claim: the operative Complaint contained few of the detailed factual allegations that

3

make up Plaintiffs' new negligent supervision claim (ECF No. 123-1 at 23-29).  These

allegations, based on information that Plaintiffs learned through discovery, bolster other

elements of the claim, such as whether SeaWorld knew or should have known that their

employees were likely to discriminate against racial minorities who visited Sesame Place.

*Belmont*, 708 F.3d at 488.  True, as SeaWorld points out, some of this information came to light

early in discovery and formed the basis for Plaintiffs' opposition to their motion to strike class

allegations (ECF No. 44).  But this is not a case where "the party knows or is in possession of the

information that forms the basis of the later motion to amend at the outset of the litigation" such

that Plaintiffs are "presumptively not diligent." *Price v. Trans Union, LLC*, 737 F. Supp.2d 276,

280 (E.D. Pa. 2010) (citations omitted).  In addition to the evidence that SeaWorld identifies,

Plaintiffs' Motion also relies on testimony from witnesses who were not deposed until the very

end of an extended discovery period that augmented these allegations, especially with respect to

the liability of Sesame Place's corporate parents.  Because Plaintiffs' negligent supervision claim

relies in part on recently discovered information, they have been diligent, *Rogers*, 2022 WL

621690, at *6, and they have satisfied Rule 16's "good cause" standard, Fed. R. Civ. P. 16(b)(4).

### B.  Leave to Amend Under Rule 15(a)(2)

Even if a party can establish "good cause" for the amendment under Federal Rule of Civil

Procedure 16(b)(4), it still must satisfy "Rule 15(a)'s more liberal standard." *Premier Comp*

*Sols.*, 970 F.3d at 319.  That rule instructs that district courts "should freely give leave when

justice so requires." Fed. R. Civ. P. 15(a)(2).  "Denial of leave to amend can be based on undue

delay, bad faith or dilatory motive on the part of the movant; . . . prejudice to the opposing party;

and futility." *Mullin v. Balicki*, 875 F.3d 140, 149 (3d Cir. 2017); *see Foman v. Davis*, 371 U.S.

178, 182 (1962).  SeaWorld bears the burden of showing that one of these grounds is present

here.  *Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp.2d 695, 700-01 (E.D. Pa. 2007); *see also*

*Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of V.I., Inc.*, 663 F.2d 419, 426 (3d Cir. 1981).

"A decision on whether to permit amendment of the pleadings generally falls within the District

Court's discretion," *Mullin*, 875 F.3d at 150, and "a court is not required to grant leave to amend

in every instance where leave is sought," *Long v. Bristol Twp.*, 2012 WL 3517347, at *2 (E.D.

Pa. Aug. 14, 2012) (quoting *Schutter v. Herskowitz*, 2008 WL 2726921, at *7 (E.D. Pa. July 11,

2008)).  With one narrow exception, none of these grounds applies here.

### i.   *Futility*

SeaWorld argues that leave to amend should be denied as futile, which is grounds to deny

the motion where the additional allegations "would fail to state a claim upon which relief could

be granted," as under Federal Rule of Civil Procedure 12(b)(6).  *Shane v. Fauver*, 213 F.3d 113,

115 (3d Cir. 2000) (citation omitted).  In other words, if the proposed complaint does not

"contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)), amendment is futile and the motion must be denied.  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Id.*  The complaint must be

construed "in the light most favorable to the plaintiff," with the question being "whether, under

any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Fowler*

*v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quotation omitted).

### a.   Preemption

In opposing Plaintiff's Motion for Leave to Amend, SeaWorld argues that Plaintiffs'

claim is preempted by the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. C.S. § 951 *et*

*seq.*, because it "arises out of alleged race discrimination that could have been brought under" that law's ban on discrimination in public accommodations.  For the reasons set forth below, this argument is refuted: Plaintiffs' negligent supervision claim arises out of facts unrelated to a discrimination claim that would need to be brought under the PHRA and, accordingly, is not preempted by the PHRA.  Explaining why requires a review of the law's text, structure, and policy rationale.  It enumerates a list of rights, provides for a remedy to vindicate those rights, and lays out a procedure for doing so.  Section five provides that it is "an unlawful discriminatory practice" for, among other things, "any person being the owner, lessee, proprietor, manager . . . or employe of any public accommodation, resort or amusement to[] . . . [r]efuse, withhold from, or deny to any person because of his race, . . . any of [its] accommodations, advantages, facilities or privileges . . . ."[3]  43 Pa. C.S. § 955(i); *accord Fairfield Twp. Volunteer Fire Co. No. 1 v. Commonwealth*, 609 A.2d 804, 805 n.1 (Pa. 1992).  The PHRA expressly sets out "[a] right to remedy for discrimination," *Clay v. Advanced Comput. Applications, Inc.*, 559 A.2d 917, 919 (Pa. 1989), providing that "[t]he opportunity . . . to obtain all the accommodations, advantages, facilities and privileges of any public accommodation . . . without discrimination because of race . . . is hereby recognized as and declared to be a civil right which shall be enforceable as set forth in this act."  *Id.* § 953.

Generally, the PHRA preempts other claims aimed at vindicating the rights that it protects.  *See, e.g.*, *Weaver v. Harpster*, 975 A.2d 555, 509 n.10 (Pa. 2009) ("[T]he legislature has made the PHRA the exclusive state law remedy for unlawful discrimination, preempting the advancement of common law claims for wrongful discharge based on claims of

---

[3] Sesame Place undoubtedly qualifies as a "public accommodation, resort or amusement" as defined in the statute. 43 Pa. C.S. § 954(l) (defining the term to include "amusement and recreation parks").

discrimination."); *Vincent v. Fuller Co.*, 616 A.2d 969, 974 (Pa. 1992) ("[P]ersons with claims that are cognizable under the [PHRA] must avail themselves of the administrative process of the [PHRC] or be barred from the judicial remedies authorized . . . ."). Otherwise, "the statutory scheme [of the PHRA] would be frustrated if aggrieved [parties] were permitted to circumvent the PHRC by simply filing claims in court. This would result in the very sort of burdensome, inefficient, time consuming, and expensive litigation that the PHRC was designed to avert." *Clay*, 559 A.2d at 920; *accord Bruffett v. Warner Commc'ns, Inc.*, 692 F.2d 910, 919 (3d Cir. 1982) ("If a common law action for the same claims were recognized, it would give the claimant an opportunity to circumvent the carefully drafted legislative procedures.").

That preemption, however, is bounded in at least two important respects in line with the PHRA's plain text. First, nothing in the law's exclusivity provision "shall be deemed to repeal or supersede any of the provisions of any existing or hereafter adopted municipal ordinance, municipal charter or of any law of this Commonwealth relating to discrimination." 43 Pa. C.S. § 962(b). Thus, "an aggrieved party is not mandated to invoke the PHRA's procedures when other laws," such as a state whistleblower law or constitutional claims, "provide a cognizable remedy based on the harm alleged." *Harrison v. Health Network Lab'ys Ltd. P'ships*, 232 A.3d 674, 683 (Pa. 2020); *accord Imboden v. Chowns Commc'ns*, 182 F. Supp.2d 453, 458 (E.D. Pa. 2002) (citing *McNasby v. Crown Cork & Seal Co.*, 888 F.2d 270, 281 (3d Cir. 1989)).

Second, and crucial to this case, even when a common-law claim is asserted, if there is a "separate set of facts that support" that claim "outside of the act of discrimination," it is not preempted by the PHRA. *Keck v. Comm. Union Ins. Co.*, 758 F. Supp. 1034, 1039 (M.D. Pa. 1991). In other words, "[i]f . . . the act that would support the common law claim is only an act of discrimination, the claim is preempted by and must be adjudicated within the framework of

the PHRA." *Id.*  If, however, "a common law tort claim and a discrimination claim are brought in the same lawsuit, the common law claim will not be preempted by the PHRA if it is factually independent of the discrimination claim." *Id.* at 1038.  This is the case because the exclusivity of the PHRA as a remedy extends only to "acts declared unlawful by section five of th[e] act" that are "based on the *same grievance* of the complainant concerned."  43 Pa. C.S. § 962(b) (emphasis added).

Two cases illustrate the scope of this preemption doctrine.  The first is *Schweitzer v. Rockwell International*, 586 A.2d 383 (Pa. Super. 1990).  There, a Rockwell employee who had been sexually harassed and assaulted by her supervisor sued her employer, alleging it was directly liable for sex discrimination under the PHRA and vicariously liable for assault and intentional infliction of emotional distress ("IIED") for her supervisor's conduct. *Id.* at 385.  The trial court granted summary judgment to Rockwell in part because the PHRA and the state worker's compensation law were the "exclusive remedies for assault and [IIED]." *Id.* at 386. The Superior Court reversed, *id.* at 392, noting that the PHRA's exclusivity provision only preempts actions to seek redress for acts that it prohibits, not "independent legal actions based upon the underlying acts." *Id.* at 388-89 ("In [Section 962(b)], 'grievance' refers to the phrase 'acts declared unlawful by section five of this act,' and can in no way be construed to mean the 'underlying acts' themselves.").  Moreover, assault and IIED serve different policies than the PHRA does, and "preventing Schweitzer from bringing her common law claims in the common pleas court actually frustrates the purpose of the statute, the prevention and remediation of discrimination." *Id.* at 389 (citation omitted).  This holding is consistent with the Pennsylvania Supreme Court's opinion in *Clay*, which held that wrongful discharge claims are preempted by the PHRA, because unlike IIED claims, they plainly fall within the aegis of the PHRA. *Id.* at

390 (citing *Clay*, 559 A.2d at 921); *see* 43 Pa. C.S. § 955(a).

The second case worth focusing some attention on is *Keck*, where a former employee sued for disability-based discrimination under the PHRA and also alleged breach of contract "based on discharge due to [disability], which, Keck urges, is a violation of her employment contract." 758 F. Supp. at 1035. The district court dismissed that claim as preempted. *Id.* at 1039. Canvassing the recent jurisprudence expounding the PHRA's preemptive scope, including *Clay* and *Schweitzer*, the court concluded Pennsylvania law dictates that "if all or part of the facts that would give rise of a discrimination claim would also independently support a common law claim, the common law claim is not preempted by the PHRA and need not be adjudicated within its framework." *Id.* As an example of when this situation might arise, the *Keck* court hypothesized that, "if an employer effected all the elements of [IIED] upon an employee, and chose to do so because the employee was black, the employer may be found liable for discrimination as well as [IIED]." *Id.* at 1038. In the case before it, the breach of contract claim by its own terms nevertheless was based on the plaintiff's alleged firing on the basis of her disability and could not stand "outside the act of discrimination." *Id.* at 1039. *Schweitzer* and *Keck* thus show that, although the PHRA does preempt some common-law claims, it does so only where: (1) the wrongdoing alleged in the common-law claim is covered by the plain text of Section 955; and, (2) preemption would be consistent with the policies that the statute's exclusivity and exhaustion provisions are designed to further.[4]

---

[4] Cases that have held that the negligent supervision claims before them were preempted, *e.g.*, *Eure v. Friends' Cent. Sch. Corp.*, 2019 WL 3573489, at *14 (E.D. Pa. Aug. 5, 2019); *Graudins v. Retro Fitness, LLC*, 921 F. Supp.2d 456, 466 (E.D. Pa. 2013); *Randler v. Kountry Kraft Kitchens*, 2012 WL 6561510, at *14 (M.D. Pa. Dec. 17, 2012); *Youssef v. Anvil Int'l*, 2007 WL 9809236, at *5 (E.D. Pa. Nov. 28, 2007), are consistent with these limitations. Each of these negligent supervision claims alleged acts of employment discrimination that fell in the heartland of the PHRA's protections. Section 955(a) of the PHRA makes it "an unlawful discriminatory practice . . . [f]or any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability . . . to refuse to hire or employ or contract with, or to bar or to discharge from employment . . . or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire,

Given this distinction, Plaintiffs argue that their negligent supervision claim complies with the limitation articulated in *Keck* and can stand independent of any claim of racial discrimination.  They are correct.  Although the negligent supervision claim is connected to the discrimination they allegedly suffered, the factual allegations underlying this claim are different from those that would form the basis for a hypothetical public accommodation claim brought under the PHRA, so it is not preempted.

The elements of the two claims call for markedly different factual inquiries.  To review, a claim for negligent supervision requires that Plaintiffs show: (1) SeaWorld "fail[ed] to exercise ordinary care to prevent" racial discrimination by its employees while they were acting outside the scope of their employment; (2) that discrimination took place at Sesame Place; and, (3) SeaWorld "kn[ew] or ha[d] reason to know of the necessity and ability to control" those employees.  *Belmont*, 708 F.3d at 487-88 (citations omitted).  It is directed at an employer for its failure to uphold its "duty to reasonably monitor and control the activities of an employee" and its "duty to abstain from hiring an employee and placing that employee in a situation where the employee will harm a third party."  *Id.* at 488 (citing *Hutchison ex rel. Hutchison v. Luddy*, 742 A.2d 1052, 1059-60) (Pa. 1999)).  Negligent supervision claims thus focus on an employer's knowledge of and attempts to control (or lack thereof) an employee's conduct.  *See, e.g.*, *Coath v. Jones*, 419 A.2d 1249, 1250-51 (Pa. Super. 1980).

Contrast these allegations with what is required to sustain a claim of violation of Section 955(i).  Under that statute, a plaintiff must prove that: (1) he or she is a member of a protected

---

tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required."  43 Pa. C.S. § 955(a).  The negligent supervision claims in these cases alleged employment discrimination covered by this provision.  *Eure*, 2019 WL 3573489, at *1 (wrongful discharge on the basis of race); *Graudins*, 921 F. Supp.2d at 466 (sexual harassment); *Randler*, 2012 WL 6561510, at *4 (sexual harassment,); *Youssef*, 2007 WL 9809236, at * (discrimination on the basis of national origin).

class; (2) the defendant falls under the PHRA's definition of a public accommodation; and,

(3) he or she was discriminated against on the basis of membership in that class. *Cook v. Wirtz*,

35 Pa. D. & C.4th 264, 269-73 (Pa. C.P. Allegheny Cnty. 1996).  These elements closely track

the elements for liability under Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a.  *See*

*Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996) (citations omitted) ("Pennsylvania

courts . . . generally interpret the PHRA in accord with its federal counterparts.").  The elements

of a Title II claim are:

> (1) [Plaintiff] is a member of a protected class; (2) attempted to exercise the right
> to full benefits and enjoyment of a place of public accommodation; (3) was
> denied those benefits and enjoyment; and (4) was treated less favorably than
> similarly situated persons who are not members of the protected class.

*Shumate v. Twin Tier Hospitality, LLC*, 655 F. Supp.2d 521, 537 (M.D. Pa. 2009) (quoting

*McCoy v. Homestead Studio Suites Hotels*, 390 F. Supp.2d 577, 584-85 (S.D. Tex. 2005)).

Liability under both Section 955(i) and Title II keys off the actual discriminatory conduct that a

plaintiff alleges took place—here, the conduct of SeaWorld's employees at Sesame Place.  That

is, in *Keck*'s parlance, a "separate set of facts" from the negligent supervision claim's focus on

the employer's careless hiring and management practices.  758 F. Supp. at 1039.

Here, Plaintiffs' Second Amended Complaint reflects this distinction, so the negligent

supervision claim in it is not preempted.  Plaintiffs base their claim on allegations that SeaWorld

"fail[ed] to exercise ordinary care to prevent the intentional harm inflicted upon Plaintiffs by

their authorized agents . . . whose racially discriminatory conduct was committed outside the

scope of their employment" (ECF No. 123-1 at 24 (Second Am. Compl. ¶ 127)).  SeaWorld

committed this alleged breach by relying on a large number of teenage employees from high

schools in Bucks County, Pennsylvania, where a "culture of racism" was endemic.  *Id.* at 26

(Second Am. Compl. ¶ 130(i)).  SeaWorld subsequently "received written complaints from park

patrons alleging racial discrimination by its employees." *Id.* at 27 (Second Am. Compl.

¶ 130(n)).  And upon receiving these complaints, SeaWorld "either made no attempt to identify

the employees involved" or "never investigated many of the complaints" and "never disciplined

any employee relating to complaints of racial discrimination." *Id.* at 28 (Second Am. Compl.

¶ 130(u)).  SeaWorld thus allegedly "negligently supervised their employees [in] creating a park-

wide environment of race discrimination that violated the civil rights of plaintiffs." *Id.* at 29

(Second Am. Compl. ¶ 131).  Because Plaintiffs' negligent supervision claim is not "the same

grievance" as an alleged violation of Section 955(i), 43 Pa. C.S. § 962(b), it is not preempted by

the PHRA.

### b.  Plausibility of Plaintiffs' Allegations

Of course, whether the PHRA preempts Plaintiffs' negligent supervision claim does not

end the analysis.  SeaWorld also argues that, even if it is not preempted, Plaintiffs' negligent

supervision claim does not state a plausible claim for relief, so amendment would be futile

regardless.  The Court thus will evaluate the Second Amended Complaint as it would under a

motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6).  *Shane*, 213 F.3d at

115.

SeaWorld argues that Plaintiffs do not sufficiently allege that its employees were acting

outside the scope of their employment nor do they identify specific prior acts of racism by

specific SeaWorld employees involved in the incidents alleged such that Seaworld could have

put it on notice of the risk of harm to Plaintiffs.  Both arguments, do not warrant dismissal of the

negligence supervision claim in the Second Amended Complaint.

Unless the facts are not in dispute, "the scope of a servant's employment is a fact

question for the jury." *Ferrell v. Martin*, 419 A.2d 175, 180 (Pa. Super. 1980) (citations omitted)

particularly where, as illustrated in the extensive summary judgment briefing that has already been filed, whether that is the case here is in sharp dispute. It simply is too early to conclude that SeaWorld's employees were acting outside the scope of their employment as a matter of law when they allegedly discriminated against Plaintiffs on the basis of their race.

SeaWorld argues that because Plaintiffs do not "allege *any* prior bad acts or *any* prior misconduct by *any* at-issue employee" they have not been put on notice of the individual characteristics of the employees who they allegedly negligently supervised: "What was [the fellow employee's] conduct prior to [the harmful intentional act], and was it of such a nature as to indicate a propensity for [that harmful act] . . . ?" *Heller v. Patwil Homes, Inc.*, 713 A.2d 105, 108 (Pa. Super. 1998); *accord Dempsey v. Walso Bureau, Inc.*, 246 A.2d 418, 422 (Pa. 1968).

But given the nature of Plaintiffs' claim, their allegations are plausible enough to proceed. The vast majority of the allegations involve employees wearing full-body costumes of different Sesame Street characters, so it makes perfect sense that Plaintiffs do not—indeed cannot—identify the specific SeaWorld employees involved. *Cf. Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 107 n.31 (3d Cir. 2015) (citations omitted) ("Several Courts of Appeals accept allegations 'on information and belief' when the facts at issue are peculiarly within the defendant's possession."). But as discussed above, the Second Amended Complaint is replete with allegations that SeaWorld was on notice about the alleged racist environment in which many of its employees grew up and that the company had an intimate relationship with that environment. Accordingly, the allegations plausibly state that, in light of the longstanding and close relationship between Sesame Place and the community surrounding it, SeaWorld was on notice of the risk that a substantial portion of its employees were likely to engage in intentional racial discrimination. In that the Second Amended Complaint also alleges in detail the specific

13

instances of racial discrimination all of which took place at Sesame Place, Plaintiffs have plausibly alleged that SeaWorld was negligent in its supervision of its employees at Sesame Place and leave to amend will not be denied on futility grounds.[5]

### ii.   Undue Delay

Nor has there been undue delay in seeking leave to amend. "[T]he question of undue delay requires [a court] focus on the movant's reasons for not amending sooner." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). Not all delays, even lengthy ones, are undue. *Id.* (citation omitted) ("The mere passage of time does not require that a motion to amend a complaint be denied on grounds of delay."). Instead, "[d]elay becomes 'undue,' and thereby creates grounds for the district court to refuse leave, when it places an unwarranted burden on the court or when the plaintiff has had previous opportunities to amend." *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008) (citation omitted). "The question of undue delay" also "focus[es] on the plaintiffs' motives for not amending their complaint to assert this claim earlier." *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984).

No such burden or improper motive is present here. Although, as SeaWorld puts it, "the theories behind [Plaintiffs'] proposed amendments were or should have been known to them since the start of the case," that does not mean there has been undue delay. Delay becomes undue when the moving party "become[s] fully apprised of the pertinent details upon which to

---

[5] SeaWorld also argues that, because Plaintiffs' claim for violation of 42 U.S.C. § 1981 requires proof of *respondeat superior* liability, *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (citation omitted), and that type of liability requires proof that its employees were operating within the scope of their employment, *e.g.*, *Williams v. Cloverland Farms Dairy, Inc.*, 78 F. Supp.2d 479, 485 (D. Md. 1999), concluding that Plaintiffs have plausibly alleged as part of their negligent supervision claim that its employees were operating outside that scope requires dismissal of their federal claim. But, even where two "theories undercut one another . . . a plaintiff may plead in the alternative." *Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 189 (3d Cir. 1997); *accord* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."). Although Plaintiffs "may not ultimately *recover on both*" their negligent supervision and Section 1981 claims, they "*may plead*" both. *Alpha Pro Tech, Inc. v. VWR Int'l LLC*, 984 F. Supp.2d 425, 446 (E.D. Pa. 2013) (citation omitted).

14

base its claims." *The Pep Boys—Manny, Moe & Jack v. Safeco Corp.*, 2005 WL 3120265, at *2 (E.D. Pa. Nov. 21, 2005).  As discussed in the context of the good cause inquiry, that was not until late last year, and Plaintiffs filed their Motion barely a month after the last relevant deposition was taken.  The cases that SeaWorld cites where undue delay was found because "the basis of the proposed second amended complaint . . . has been known to Plaintiff for months" thus are inapposite, *MRO Corp. v. Humana, Inc.*, 2017 WL 3675387, at *3 (E.D. Pa. Aug. 23, 2017), and "the interests in judicial economy and finality of litigation" do not counsel against granting leave to amend.  *Cureton*, 252 F.3d at 273 (citation omitted).

### *iii.*     *Prejudice*

Finally, SeaWorld has not shown that it would be prejudiced by granting leave to amend. "[P]rejudice to the non-moving party is the touchstone for the denial of an amendment." *Cornell & Co. v. Occupational Safety Health Rev. Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978) (citations omitted).  Prejudice can take the form of "additional discovery, cost, and preparation to defend against new facts or new theories." *Cureton*, 252 F.3d at 273 (citations omitted).

The company argues that Plaintiffs' Motion amounts to a "shift [in] the entire theory of their case" that will require reopening discovery, further rounds of briefing, and a delay in trial. That is not so.  There is no need for additional discovery: in that the evidence which underpins the negligent supervision claim apart from being internal to Defendants was also adduced during fulsome discovery.  Further, the Court has tested the viability of the negligent supervision claim in this opinion already, so there is no need for additional briefing on a motion to dismiss. However, Defendants will be permitted to file supplemental briefing on their Motion for Summary Judgment addressing the negligent supervision claim.

There is, however, one carveout to this grant of Plaintiffs' request for leave to amend: In

their Second Amended Complaint, Plaintiffs add allegations that SeaWorld received complaints of racial discrimination across "all aspects of the park, including swimming pools, park water rides, park amusement rides, park parades, park staff assistance, and park food concession lines" (ECF No. 123-1 at 27).  SeaWorld points out that it would need discovery to ascertain "which employees were involved" in these instances of alleged racial discrimination "and what their intentions and the circumstances were."  These allegations no doubt arise from information that Plaintiffs uncovered during discovery, but they are categorically different from the allegations in the First Amended Complaint, which focused on interactions between the Plaintiffs' children and SeaWorld employees performing as Sesame Street characters.  As such, significantly more discovery would be required to develop the contours of these new categories of alleged discrimination.

Plaintiffs' allegations of discrimination beyond their interactions with costumed characters are analogous to those analyzed in *Berger v. Edgewater Steel Company*, 911 F.2d 911 (3d Cir. 1990).  There, a group of employee plaintiffs lost two retirement benefits and sued, alleging violations of, *inter alia*, ERISA.  *Id.* at 914.  During discovery, the plaintiffs learned that one of the defendant's officers was granted one of the same retirement benefits that they had been denied.  *Id.* at 924.  The Third Circuit upheld the district court's decision to deny leave to amend because "new and extensive discovery . . . would have been necessary in order to develop the [plaintiffs'] theory of discrimination in favor of the highly compensated employees."  *Id.* Leave to amend would have morphed the plaintiffs' claim into a "new *and substantially broader*" one.  *Id.* (emphasis added).  In the same way, supporting Plaintiffs' negligent discrimination claim here with allegations of discrimination outside of interactions with costumed characters would turn it into a substantially broader claim, necessitating additional

16

discovery, so those the motion to amend will be denied with respect to these allegations in the Second Amended Complaint.  Having trimmed the scope of Plaintiffs' Second Amended Complaint, there will be no prejudice to SeaWorld in allowing the rest of it to proceed.  *See Dole v. Arco Chem. Co.*, 921 F.2d 484, 488 (3d Cir. 1990) (noting that "[t]he mere fact that a summary judgment motion will need to be revised does not, without more, establish that prejudice will result from permitting the plaintiff to amend").

### III.    CONCLUSION

For the forgoing reasons, Plaintiffs' Motion for Leave to Amend will be granted in part and denied in part.

An appropriate order follows.

**BY THE COURT:**

*/s/ Wendy Beetlestone*
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
**WENDY BEETLESTONE, J.**