**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **QUINTON BURNS, *et al.*,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION** |
| | : | |
| **SEAWORLD PARKS & ENTERTAINMENT, INC.; and SEAWORLD PARKS & ENTERTAINMENT LLC,** | : | **NO. 22-cv-02941** |
| | : | |
| **Defendants.** | : | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SANCTIONS**

## TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1

II. FACTUAL AND PROCEDURAL BACKGROUND ........ 2

A. The Fleming Family's Claim ........ 2

B. Mr. Fleming's February 2023 Discovery Deposition ........ 3

[redacted] [redacted] ........ 4

D. The First Trial ........ 4

1. Plaintiffs' Trial Counsel's Unsuccessful Attempt to Delay the Trial ........ 4

2. Mr. Harris and Mr. Ruff's Trial Preparation of Mr. Fleming on May 7th ... 5

3. Plaintiffs' Trial Counsel's Communications with the Pennsylvania Bar Association on May 7th and May 8th ........ 7

4. Mr. Ruff's Communication with Mr. Fleming on May 8th ........ 8

5. Mr. Harris and Mr. Ruff's Ex Parte Conference with the Court on May 8th ........ 8

6. The Mistrial ........ 9

E. Defendants' Efforts to Determine Mr. Fleming's Allegedly False Deposition Statement ........ 10

F. Plaintiffs' Counsel's June 6th Explanation Regarding Their Withdrawal ........ 11

G. Plaintiffs' Severing of the Fleming Family ........ 12

H. Mr. Fleming's August 2024 Deposition Regarding Plaintiffs' Trial Counsel's Claims Precipitating the Mistrial ........ 13

I. The Rescheduled Trial ........ 16

III. LEGAL STANDARDS ........ 17

A. Section 1927 ........ 17

B. Local Rule 83.6.1 ........ 17

C. The Court's Inherent Authority ........ 17

IV. THE COURT SHOULD SANCTION PLAINTIFFS' TRIAL COUNSEL AND THEIR LAW FIRMS ....19

A. The Proceedings Have Been Multiplied .... 19

B. Plaintiffs' Trial Counsel Acted In An Unreasonable and Vexatious Manner .... 20

[redacted] ....20

2. It Was Unreasonable and Vexatious to Mislead the Court to Believe that the Grounds for Withdrawal Had Been Met ....21

3. It Was Unreasonable and Vexatious to Move to Sever the Fleming Family's Claims Without a Proper Basis ....27

C. The Costs of the Proceedings Increased as a Result of Plaintiffs' Trial Counsel's Conduct .... 27

D. Plaintiffs' Trial Counsel's Conduct is Tantamount to Bad Faith .... 28

V. CONCLUSION ....30

## TABLE OF AUTHORITIES

**Cases**

*Apoian v. Am. Home Prods. Corp.*, 108 F. Supp. 2d 454 (E.D. Pa. 2000) ....................................29

*In re: Avandia Mktg., Sales Practices & Prods. Liability Litig.*, 469 F. Supp. 3d 357 (E.D. Pa. 2020)....................................................................................................16

*Baker Indus., Inc. v. Cerberus Ltd.*, 764 F.2d 204 (3d Cir. 1985) ..........................................17, 28

*Barley v. Fox Chase Cancer Ctr.*, 54 F. Supp. 3d 396 (E.D. Pa. 2014) .......................................27

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991).................................................................... 17-18

*Deadwyler v. Volkswagen of Am., Inc.*, 134 F.R.D. 128 (D.N.C. 1991) ................................20, 27

*Deputla v. Rosen*, 2020 WL 6135793 (S.D.N.Y. Oct. 16, 2020)..................................................20

*Ferguson v. Valero Energy Corp.*, 454 F. App'x 109 (3d Cir. 2011)..................................... 18-19

*Goodyear Tire & Rubber Co. v. Hager*, 581 U.S. 101 (2017) ......................................................18

*Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119 (3d Cir. 2009) ....................................17

*Ha v. Baumgart Café of Livingston*, 2018 WL 1981478 (D.N.J. Apr. 26, 2018)...................26, 28

*Holcombe v. U.S. Airways Grp., Inc.*, 2017 WL 10084142 (E.D.N.Y. July 31, 2017) ...................................................................................................................20

*Jacovetti Law, P.C. v. Shelton*, 2020 WL 2556951 (E.D. Pa. May 20, 2020)..............................28

*Johnson v. Res. For Human. Dev.*, 888 F. Supp. 689 (E.D. Pa. 1995)............................. 26-27, 29

*Johnson v. Smithkline Beecham Corp.*, 2015 WL 1004308 (E.D. Pa. Mar. 9, 2015)....................17

*Loftus v. Se. Pa. Transp. Auth.*, 8 F. Supp. 2d 458 (E.D. Pa. 1998) .............................................29

*In re Prudential Ins. Co. Am Sales Practice Litig. Agent Actions*, 278 F.3d 175 (3d Cir. 2002).........................................................................................................17, 29

*Rizzo v. Haines*, 555 A.2d 58 (Pa. 1989) .......................................................................................20

*In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90 (3d Cir. 2008)....................................................17

*TZE Global Dis Tiscaret A.S. v. Papers Unlimited, Inc.*, 2024 WL 3742715 (E.D. Pa. Aug. 9, 2024) ..........................................................................................20, 26, 28

*Young v. Smith*, 269 F. Supp. 3d 251 (M.D. Pa. 2017).................................................................26

**Statutes**

28 U.S.C. § 1927 ........ *Passim*

**Other Authorities**

Pa. R. Civ. P. 83.6.1 ........ 16-18, 29

## I. INTRODUCTION

The Court, the parties, the witnesses, and counsel are preparing to re-do the pretrial conference, jury selection, and trial that originally began three months ago. Why? Because in the middle of the first trial, Plaintiffs' Trial Counsel Mr. Harris, Mr. Ruff, and Mr. Duncan (collectively, "Plaintiffs' Trial Counsel") led the Court to believe that Plaintiff Mr. Fleming lied during his discovery deposition. And not only that, but that the lie was so material to the case that they had no choice but to withdraw as his counsel during the middle of the trial, which then resulted in a mistrial.

But that was not true. While Plaintiffs' counsel have tellingly refused to identify the alleged false testimony in Mr. Fleming's deposition transcript, Plaintiffs' Trial Counsel represented to the Court that Mr. Fleming lied in his deposition when he said [redacted] But Mr. Fleming never said that. In his deposition, Mr. Fleming never testified that [redacted]. He wasn't even asked that question. In other words, Mr. Fleming's deposition doesn't say what Plaintiffs' Trial Counsel represented to the Court that it does. And even if Mr. Fleming' deposition did contain some false statement about [redacted] (it does not), such a false statement would only have required Plaintiffs' counsel to withdraw if the statement was *material*. Assuming there was any [redacted], it would only be material if it was about Mr. Fleming's daughter's interactions or lack thereof with costumed characters, not if it was, for example, Mr. Fleming's daughter eating an ice cream cone. [redacted] would have no material bearing on this case. Plaintiffs' Trial Counsel did not even attempt to argue that any allegedly false deposition statement was actually material to the facts of this case. In fact, they made *no claim as to the content* of any allegedly [redacted] at all.

Further, Plaintiffs' Trial Counsel also misled the Court into believing that Mr. Fleming could not be reached to explain or answer to Plaintiffs' Trial Counsel's claims or to answer any questions the Court had for him on the topic. The truth, however, was that they had been engaged in text message correspondence with him less than a half hour before they raised Mr. Fleming's "issue" with the Court. Because Plaintiffs' Trial Counsel led the Court to believe that Mr. Fleming was "nowhere to be found" to defend himself, it became inevitable that the Court would grant Plaintiffs' Trial Counsel's oral motion to withdraw from his representation, which would at the very least delay the trial, and ultimately precipitated the mistrial.

In short, there was no legitimate basis for Plaintiffs' Trial Counsel's emergency withdrawal during the middle of the trial. But they blew up the case anyway. This resulted in what Plaintiffs' Trial Counsel had wanted and sought since the very beginning—a delay of the trial so that their lead counsel (who was ill during the first trial) could participate. This conduct is unreasonable, vexatious, and in bad faith, and it has resulted in significant delay, multiplication of proceedings, and increased costs. Plaintiffs' Trial Counsel and their law firms should therefore be sanctioned and required to pay the attorneys' fees, costs, and expenses Defendants incurred as a result of their misconduct.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Fleming Family's Claim

The Fleming Family became Plaintiffs in this case on September 28, 2022, with the filing of the First Amended Complaint. ECF 25. The Flemings allege that during a July 4, 2022 visit to Sesame Place, Mr. Fleming's daughter, O.F., attempted to interact with the Sesame Street character Telly Monster during a parade, and that the performer dressed as Telly Monster refused to engage with her because of her race. ECF 123-1 at ¶¶ 45, 49, 50.

**B. <u>Mr. Fleming's February 2023 Discovery Deposition</u>**

Mr. Ruff prepared Mr. Fleming for and defended Mr. Fleming's first deposition in February of 2023. N. Fleming Feb. 27, 2023 Dep. Tr., attached hereto as Ex. 1, at 5:5; 7:22-1; 11:5-12:11. During that deposition, Mr. Fleming was asked about social media posts he made while at Sesame Place, but he did not testify as to whether he affirmatively deleted or destroyed any such posts; only that he posted to his Facebook and Instagram "Stories," which automatically disappear after 24 hours. *Id.* at 200:4-203:8. He was not asked about the content of those social media posts. *Id.*

Mr. Fleming also was questioned about photographs he took during his July 4, 2022 Sesame Place visit. *Id.* at 219:14-222:19. Mr. Fleming freely admitted that he had deleted some of those photographs. *Id.* at 219:14-221:1 ("I was deleting things I found to be unnecessary while I was there, and after the fact to save memory on my phone I deleted a couple more items."). But, as he testified, the photographs he deleted did not include O.F. with costumed characters. *Id.* at 222:6-20. He also testified that he did not know ***when*** he deleted those photographs. *Id.* at 221:2-222:5 (testifying that he did not think that he deleted them in July, but was not sure; that he was not sure if he deleted them in August, and he did not recall if he deleted them in September; and that deletion could have been "[e]ither before [he became a plaintiff in September] or it could have been during, like before I even knew it was like this drawn out, like").

Mr. Fleming also was asked about videos he took during his Sesame Place visit. *Id.* at 162:10-167:4. He also admitted that he had deleted some of those videos, *id.* at 162:10-22, testifying that "[t]here was a lot that I deleted while I was there, or not while I was there but like when we left. It was just like I don't want to say wasted footage, but … she didn't get no moment or anything like that … so I deleted some of that stuff." *Id.* at 163:3-10.

[redacted]

On the evening of May 2, 2024, [redacted]. May 2, 2024 email from J. Simpson to Plaintiffs' counsel, attached as Ex. 2 hereto. [redacted] N. Fleming Aug. 14, 2024 Dep. Tr., attached hereto as Ex. 3, at 14:4-15:1; 19:18-21:3. [redacted] *Id.* at 20:18-21:3. Plaintiffs' counsel Mr. Murphy[1] and Mr. Harris [redacted]. Declaration of John M. Simpson ("Simpson Decl."), filed herewith, at ¶ 4.

**D. The First Trial**

1. Plaintiffs' Trial Counsel's Unsuccessful Attempt to Delay the Trial

Before the start of the first trial, Plaintiffs' Trial Counsel requested that the Court delay the start of the trial because two of Plaintiffs' attorneys, including their lead trial counsel, Mr. Murphy, were experiencing personal issues that prevented them from being present. Trial Transcript, Day One (May 6, 2024), excerpts attached hereto as Ex. 4, at 3:17-6:5 ("our initial first chair, Mr. Murphy … took sick … So he is out of commission, not able to be here[,]" and "[w]e had planned to have him handle a great portion of this trial, including a portion of the opening as well as closing and other aspects of trial including … one of the 30(b)(6) witnesses" and the direct examinations of two plaintiffs). Mr. Ruff further explained to the Court, "Mr. Murphy is a very accomplished trial lawyer, and we certainly would like to have him with us. We would like to have his expertise with us." *Id.* at 4:12-14. Therefore, Mr. Ruff continued, Plaintiffs' Trial Counsel "felt [it] was

[1] Mr. Murphy is a named partner of Murphy, Falcon & Murphy, and Plaintiffs' lead counsel.

necessary" to seek a continuance "based on the plan [they] had established for this trial, the years that [they] have been working on this case and for who Mr. Murphy is and what he stands for." *Id.* at 4:35-5:3.

The Court confirmed that all of Plaintiffs' Trial Counsel had been on the case since its inception and had tried cases before. *Id.* at 5:4-14. Then noting that there were 60 potential jurors already in the building and that pushing back the trial could result in "months and months and months" of delay, the Court declined to delay the start of the trial, but provided Plaintiffs' Trial Counsel additional time to prepare their opening statement. *Id.* at 5:15-25. Jury selection began as scheduled on May 6, 2024.

2. Mr. Harris and Mr. Ruff's Trial Preparation of Mr. Fleming on May 7th

On the second day of trial, May 7th, Plaintiffs' Trial Counsel represented that they would call Mr. Fleming to testify the next day, on May 8, 2024. Trial Transcript, Day 2 (May 7, 2024), excerpts attached hereto as Ex. 5, at 224:6-19. In the lead-up to the trial, Mr. Fleming and his counsel were frustrated with each other—Mr. Fleming was frustrated with what he perceived as his counsel's lack of preparedness and changing plans without consideration of his other obligations. *See* Ex. 3 at 14:4-18; 22:16-23:23; 75:21-76:21. On the first and second days of trial (May 6 and 7), Mr. Fleming hung up on Mr. Ruff and Mr. Harris multiple times out of frustration. *Id.* at 56:5-16; 75:21-76:16. Finally, after 8:00 p.m. on the evening of May 7th, Mr. Fleming met by Zoom with Mr. Harris and Mr. Ruff to prepare for his trial testimony. Ex. 3 at 21:20-22:25; 23:24-24:13. That preparation session lasted approximately 30 minutes. *Id.* at 23:24-24:14.

Mr. Harris led the session and was the one questioning Mr. Fleming. *Id.* at 24:15-25:2. Neither Mr. Harris nor Mr. Ruff discussed the topic of deleting social media with Mr. Fleming during his trial preparation session. *Id.* at 36:5-15; 64:8-66:3. Mr. Harris was focused on how many pictures and videos Mr. Fleming took and deleted during his Sesame Place visit. *Id.* at 26:7-

16; 35:19-23. Mr. Fleming indicated that he could not give an exact answer because he could not remember. *Id.* at 26:17-27:12. Tensions rose as Mr. Harris continued to ask about how many photographs or videos were taken and deleted, Mr. Fleming continued to insist that he could not provide an exact number, and Mr. Harris was not satisfied with that answer. *See id.* at 27:18-28:4; 30:8-19; 32:9-13; 51:17-24; 114:21-115:25 ("He just said that I need to give a number. He just kept saying, you know, we're not going into the courtroom with a bunch of I don't knows."). Then Mr. Harris consulted Mr. Fleming's February 27, 2023 deposition transcript, and confirmed that Mr. Fleming's answers at the preparation session were almost the same as those he gave during his deposition (*id.* at 28:11-22; 29:8-13)—*i.e.*, he could not provide a precise number. Mr. Harris then told Mr. Fleming that he could not testify at trial that he did not know the exact number. *Id.* at 27:13-17; 114:21-115:25; Fleming Letter to Judge Beetlestone, attached hereto as Ex. 6, at 2-3.[2] When pushed by Mr. Harris to provide more specificity, Mr. Fleming stated that he had maybe taken a "handful" videos. Ex. 6 at 3.[3]

The trial preparation session ended abruptly with Mr. Harris telling Mr. Fleming, "I don't care about you," and storming off camera. Ex. 3 at 30:1-31:11. Mr. Ruff did not try to clear up any confusion or attempt to continue the preparation session. *Id.* at 25:11-24; 30:1-33:9. Instead, after Mr. Harris walked away from the Zoom, Mr. Ruff told Mr. Fleming that they would "be in touch." *Id.* at 31:7-16. Mr. Fleming was left not knowing if he was to appear for trial the next

---

[2] This letter was authenticated during and marked as part of Exhibit 6 to Mr. Fleming's August 14, 2024 deposition. Ex. 3 at 109:16-112:18.

[3] Mr. Fleming understood Mr. Harris to be focused on the ***number*** of photographs and videos taken and deleted, not on ***when*** any deletion occurred. Ex. 3 at 26:7-11; 49:19-50:2; 91:7-12.

morning or not. *Id.* at 53:19-54:3; 68:23-69:4. Mr. Ruff did not contact Mr. Fleming again until 8:31 a.m. the following day (*id.* at 54:4-58:6), less than a half hour before trial was to begin.

3. Plaintiffs' Trial Counsel's Communications with the Pennsylvania Bar Association on May 7th and May 8th

Later in the evening of May 7, 2024, Plaintiffs' Trial Counsel called the Pennsylvania Bar Association Ethics Hotline. *See* May 8, 2024 pabar.org email ("PBA Email"), attached as Ex. 7 hereto.[4][5] What Plaintiffs' Trial Counsel conveyed to the Pennsylvania Bar Association Ethics Hotline, as understood by the attorney receiving the call, was that:

[redacted]

Ex. 7 at 3.

[redacted]

*Id.*

---

[4] Defendants are not aware which of Plaintiffs' Trial Counsel made the telephone call, but [redacted] Ex. 7 at 2.

[5] This document was filed under seal as ECF 220 and was marked as Exhibit 4 to Mr. Fleming's August 14, 2024 deposition.

[6] Both Pennsylvania Rule of Professional Conduct 3.3 and the ABA Model Rule of Professional Conduct 3.3 state that an attorney must take remedial measures when the attorney's client has offered false, material evidence.

4. Mr. Ruff's Communication with Mr. Fleming on May 8th

At 8:31 a.m. on May 8th, prior to the start of the third day of trial, Mr. Ruff sent a text message to Mr. Fleming stating that:

> "Based on what we learned last night from you regarding your deposition testimony, … [w]e have [] been advised that we must tell you that you should correct the false statements that you made under oath in your deposition immediately, and if you choose not to, we will be forced to withdraw from representing you and we must do it for you."

Compilation of Text Messages Between Mr. Ruff and Mr. Fleming,[7] attached hereto as Ex. 8, at Page 5.

Mr. Fleming responded four minutes later, at 8:35 a.m., denying that he had made a false statement, writing that "[it]s not a false statement if im [sic] not sure what question you are asking during trial preparation." *Id.* at Page 4. He further stated at 8:42 a.m., "because I didn't understand how [Mr. Harris] wants [me] to give him an exact answer … now you are texting me calling me a liar?" *Id.* at Page 7.

None of Plaintiffs' Trial Counsel called Mr. Fleming that morning, asked him to come to court to explain his position, or participate in a phone conference with the Court about these issues. Ex. 3 at 62:1-63:4.

5. Mr. Harris and Mr. Ruff's *Ex Parte* Conference with the Court on May 8th

Less than a half hour later, at 9:01 a.m., Mr. Harris and Mr. Ruff sought and received an *ex parte* conference with the Court. Trial Transcript, Day Three (May 8, 2024), excerpts attached hereto as Ex. 9, at 19:18-22:17. Mr. Harris began the *ex parte* conference by talking about personal circumstances making it difficult for Plaintiffs' Trial Counsel to continue to conduct the trial. *See*

[7] These messages were authenticated during Mr. Fleming's August 14, 2024 deposition transcript and marked as Exhibit 2 thereto. *See* Ex. 3 at 16:5-19:2.

Sealed Portion of Trial Transcript, Day Three (May 8, 2024), attached hereto as Ex. 10, at 2:4-7. [redacted] *Id.* at 2:14-20. Mr. Harris then showed the Court the PBA Email. *Id.* 3:9-22. Neither Mr. Harris nor Mr. Ruff explained to the Court why the allegedly incorrect statement was material. [redacted] *Id.* at 3:23-4:1. [redacted] *Id.* at 4:1-3. They did not inform the Court that Mr. Ruff had been in text message communication with Mr. Fleming a half hour before.

6. <u>The Mistrial</u>

Following the *ex parte* conference, upon returning to the courtroom, the Court stated that "Plaintiffs' counsel have informed me that in preparing for trial, Mr. Fleming indicated to them that he had made an incorrect statement deliberately in his deposition," and that as a result, Plaintiffs' counsel intended to move to withdraw from their representation of Mr. Fleming, and the Court would grant that motion. Ex. 9 at 22:24-23:10. In doing so, the Court noted that because Mr. Fleming "apparently … is nowhere to be found right now, [] he obviously c[ould] not be made aware that he can represent himself." *Id.* at 23:8-15. Plaintiffs' Trial Counsel stated that they were not withdrawing from their representation of Mr. Fleming's daughter, O.F. "at this time." *Id.* at 24:23-25:7.

Mr. Fleming's allegedly incorrect statement was not revealed to Defendants at that time (nor its materiality to any issue at trial established) such that Defendants' counsel could have been afforded a factual basis to oppose the precipitous motion for withdrawal. Having limited

information, counsel for Defendants made an oral motion for mistrial, observing that "one of the pieces of information that is missing here is the nature of [Mr. Fleming's] perjury." *Id.* at 26:11-12. Plaintiffs' Trial Counsel ultimately concurred in the motion for a mistrial, with Mr. Harris again citing to personal and family circumstances they "would like to go attend to" (including the fact that Mr. Harris's wife was "freaking out" because there were tornadoes in their neighborhood the night before) rather than anything having to do with Mr. Fleming as the reason for their concurrence. *Id.* at 39:2-16. The Court noted that those personal circumstances were "not a reason" for a mistrial, but because the motion for mistrial was unopposed, the Court granted it. *Id.* at 39:5-40:3.

### E. **Defendants' Efforts to Determine Mr. Fleming's Allegedly False Deposition Statement**

While still having to prepare for a trial on the Fleming Family's claims without knowing Mr. Fleming's allegedly false deposition statement, Defendants undertook a months-long, multi-step process to try to uncover it, which Plaintiffs' counsel resisted at every turn.

First, on May 22, 2024, Defendants filed a motion requesting access to the *ex parte* trial transcript, (incorrectly) believing that Mr. Harris or Mr. Ruff identified the allegedly false statement on the record during that conference. ECF 200. Plaintiffs' counsel at first resisted, but ultimately agreed on June 5, 2024 that Defendants could have access to the transcript. *See* ECF 201.

Second, after Defendants received the *ex parte* transcript and discovered that it *did not* reveal what the allegedly false statement was (nor its materiality to the case), they requested that Plaintiffs' counsel provide them with the PBA Email shown to the Court during the *ex parte* conference. ECF 206-4. Plaintiffs' counsel refused. *Id.*

Third, on July 1, 2024, Defendants filed a motion for an order that the Court: (1) require Plaintiffs to provide Defendants with the documents shown or read to the Court during the *ex parte* conference and communications between Plaintiffs' counsel and Mr. Fleming on that subject matter; (2) require Plaintiffs' counsel to specifically identify the incorrect statement that Mr. Fleming made deliberately in his deposition that led to their motion to withdraw; and (3) grant Defendants leave to take a second deposition of Mr. Fleming. ECF 206; ECF 216. Plaintiffs opposed the motion. ECF 211. The Court ordered Plaintiffs to file under seal "the communications that the Defendants seek" so the Court could conduct an *in camera* review. ECF 219. Plaintiffs filed the PBA Email, but did not provide all of the communications Defendants sought. *See* ECF 222 at 1 n.1 (stating that Plaintiffs did not submit any communications between Plaintiffs' counsel and Mr. Fleming). The Court ordered Plaintiffs to provide to Defendants the documents they filed under seal and granted Defendants leave to take a second deposition of Mr. Fleming. ECF 222.[8] Plaintiffs' counsel, however, were not required to identify what portion of Mr. Fleming's deposition transcript contained the alleged deliberately incorrect statement.

### F. <u>Plaintiffs' Counsel's June 6th Explanation Regarding Their Withdrawal</u>

While Defendants were attempting to discover the allegedly false deposition statement, and nearly a month after the Court granted Plaintiffs' Trial Counsel's motion to withdraw from representing Mr. Fleming, on June 6, 2024, Mr. Ruff sent Mr. Fleming a letter confirming the withdrawal and purporting to explain the reason for it. *See* Ex. 8 at Page 9. Plaintiff's counsel's

---

[8] Plaintiffs belatedly submitted additional documents *ex parte* under seal to the Court on July 30, 2024. ECF 223, 225. In response to this submission, the Court conducted an in-person hearing on August 5, 2024 regarding whether the additional documents were privileged. *See* ECF 225. During that hearing, it was discussed that Defendants sought the same documents from Mr. Fleming by subpoena in conjunction with his second deposition, and that if Mr. Fleming produced the documents (thereby choosing to waive his privilege), the issue would become moot. To Defendants' knowledge, Mr. Fleming provided Defendants with the requested documents.

June 6th explanation for their need to withdraw was different than what they represented to the Court a month earlier.

In that letter, Mr. Ruff stated that during their trial preparation Zoom meeting, Mr. Fleming "revealed to [Plaintiffs' counsel] that [he] had deliberately lied under oath during [his] deposition." *Id*. Specifically:

> "[D]uring [Mr. Fleming's] deposition on February 27, 2023, when [he] was questioned under oath, [he] stated that it was not possible that [he] erased any … photographs or videos [that he had taken related to this case] after [he] became a Plaintiff in this case."

*Id.* According to Mr. Ruff's letter, during his trial preparation session, Mr. Fleming stated that he "indeed deleted a 'handful' of photographs and/or videos after becoming a Plaintiff in this case." *Id.*

Mr. Ruff continued, stating that Mr. Fleming told the attorneys that:

> "[H]e would again testify falsely during [his] trial testimony the next day … that [he] *did not* erase any photographs and/or videos since becoming a plaintiff, even though [he] had just admitted to [the attorneys] that [he] had indeed erased a handful of photographs and/or videos after becoming a Plaintiff in this case."

*Id.*

Further, Mr. Ruff stated that during their May 7, 2024 trial preparation session, the attorneys "informed [Mr. Fleming] that [they] would not be calling [him] as a witness in the case based on what [they] had learned from [him] because [they] have an ethical duty not to call a witness who is going to make a false statement under oath." *Id.*

### G. Plaintiffs' Severing of the Fleming Family

On June 17, 2024, Plaintiffs' counsel filed a motion on behalf of the Burns, Willie, Morales, Valdez, and Valette Families to sever the claims of Mr. Fleming and O.F. (while apparently still representing O.F.). ECF 203. The basis for the motion was that "the evidence of [Mr.] Fleming's issue" raised during the *ex parte* conference with the Court would "unfairly prejudice" the other

plaintiffs' claims if the Fleming Family was not severed. *Id.* at 3. The motion never identified what Mr. Fleming's "issue" was. Not having access to the factual basis upon which Plaintiffs' motion was based,[9] Defendants opposed the motion, arguing that the moving Plaintiffs had not met the burden for severance without identifying what the prejudicial issue was. ECF 207. The Court granted the motion to sever on July 2, 2024, ECF 210, and denied Defendants' motion for reconsideration of that order (ECF 212) on July 23, 2024, ECF 218, making clear that the Fleming Family's claims would be tried separately from those of the other Plaintiffs.

### H. <u>Mr. Fleming's August 2024 Deposition Regarding Plaintiffs' Trial Counsel's Claims Precipitating the Mistrial</u>

Defendants conducted a second deposition of Mr. Fleming on August 14, 2024[10], regarding the circumstances leading up to Plaintiffs' Trial Counsel's withdrawal of their representation and the mistrial.

Mr. Fleming's under oath testimony contrasts sharply with what Plaintiffs' Trial Counsel represented to the Pennsylvania Bar Association and the Court—[redacted]

Mr. Fleming's under oath testimony also contradicts Plaintiffs' counsel's other version in their June 6th letter to Mr. Fleming—that (1) Mr. Fleming admitted in his trial preparation session that he had lied during his deposition (2) by saying he did not **delete any photographs or videos**

---

[9] At the time Defendants filed their opposition on July 1, 2024, they had not yet received the PBA Email Mr. Harris and Mr. Ruff showed the Court (which they received in response to Court order on July 29), nor had they seen the June 6th letter from Mr. Ruff to Mr. Fleming.

[10] The deposition was duly noticed and Plaintiffs' counsel were made aware of the date, time, and location. Plaintiffs' counsel did not attend, despite still being counsel of record for Mr. Fleming's daughter, whose claims were jointly severed with those of her father.

**after becoming a plaintiff**, that (3) he intended to lie on the stand at trial, and that (4) Mr. Harris and Mr. Ruff informed him that they would not be calling him at trial during that preparation session.[11]

***First***, Mr. Fleming testified that at no point during his trial preparation session did he tell Mr. Harris or Mr. Ruff that he had lied during his first deposition. Ex. 3 at 35:24-36:4; 36:16-37:8; 64:9-65:7; 82:25-83:7. He further confirmed that he ***did not*** make any deliberately false statements in his first deposition. *Id.* at 36:16-23; 39:16-43:15; 53:3-18; 119:18-20.

***Second***, Mr. Fleming testified that [redacted], and that social media only came up to the extent that Mr. Harris asked Mr. Fleming whether he was trying to be a "rapper." Ex. 3 at 36:5-15; 64:8-66:3.

***Third***, Mr. Fleming testified that during the trial preparation session, neither Mr. Harris nor Mr. Ruff told Mr. Fleming that they believed his deposition testimony about taking or deleting photographs or videos to be false. *Id.* at 39:16-49:23; 102:4-7. In fact, Mr. Fleming repeatedly testified that Mr. Harris confirmed during that session that the answers Mr. Fleming gave during the trial preparation session were ***the same as*** the answers Mr. Fleming gave in his first deposition. *Id.* at 28:11-22; 29:8-13; 42:20-43:6; 91:13-92:6; 114:12-20. Neither in his first deposition nor in his trial preparation session could Mr. Fleming recall specifics about how many photographs or videos he had taken or deleted. *Id.* at 26:6-27:9; 28:11-29:13; 37:17-24; 38:20-23; 41:10-42:19; 47:24-49:18. Nonetheless, Mr. Fleming testified that Mr. Harris would not accept Mr. Fleming's

---

[11] Mr. Fleming specifically testified that he "absolutely" believes that Mr. Ruff's June 6th letter mischaracterized what happened in the trial preparation session. Ex. 3 at 81:14-20; 100:4-14.

answer. *Id.* at 27:13-28:3 ("He just kept going back to 'that's not going to work. We're not going to trial and … say you don't know"); *id.* at 35:19-23; 51:17-21; 114:21-23; 115:20-116:4. Further, Mr. Fleming testified that neither Mr. Harris nor Mr. Ruff asked him during the trial preparation session what the ***content*** of the photographs and videos was (*e.g.*, whether it was something highly material like O.F.'s interactions with costumed characters or something irrelevant like O.F. eating lunch). *Id.* at 37:25-38:11.

***Fourth***, Mr. Fleming testified that he did not tell Mr. Harris or Mr. Ruff during his trial preparation session that he intended to lie on the stand at trial. *Id.* at 51:52:5; 84:19-85:20.

***Fifth***, Mr. Fleming also testified that during his trial preparation session neither Mr. Harris nor Mr. Ruff told Mr. Fleming that they would not be calling him as a witness during the trial. *Id.* at 33:10-17; 85:21-86:9.

Mr. Fleming testified that he believes that the trial preparation session with Mr. Harris and Mr. Ruff was manufactured or "staged" to blow up his representation, because Mr. Ruff, who had been operating as Mr. Fleming's attorney and who had prepared him for his first deposition, did not attempt to intervene or clarify the situation between Mr. Harris and Mr. Fleming during the trial preparation session. Ex. 3 at 25:11-24; 30:1-33:9; *see also* Ex. 8 (text messages from Mr. Fleming to Mr. Ruff) at Page 8 ("After it was evident that there wasn't a clear understanding on either end about what was being communicated or asked[,] [y]ou did not one time interject or re-word the line of questioning."); *id.* at Page 10 ("You never clarified my response to the same series of questioning that clearly was confusing. I assumed based on how much Martell kept demanding an answer that he wanted a specific answer. You, as my attorney, never redirected, reworded, or asked if I understood what was being asked."); *id.* at Page 14 ("you never asked if I understood the question, you sat there quiet. So please explain how you determined something to be

deliberate? Especially when you yourself prepped me for deposition."); *id.* at Page 15 ("You sat there quiet and watched things become problematic in dialog between myself and Martell. You had the option as my attorney to step in and chose not to."); *id.* at Page 20 ("you did not redirect your co-counsel on his line of questioning and did not ask if I understood the question as my attorney. You said nothing.").

Mr. Fleming further testified that he believed that Mr. Harris and Mr. Ruff sabotaged him to use him as a scapegoat to delay the trial because they were not prepared. Ex. 3 at 108:11-109:2; 116:117:10; *see also* Ex. 8 at Page 8 ("Y'all played good cop bad cop to dupe me out of representation a day before trial); *id.* at Page 19 ("You have been trying to cover your own ass by dropping me from the case").

At the conclusion of Mr. Fleming's August 14, 2024 deposition, despite diligent questioning, Defendants' counsel is still cannot identify the portion of Mr. Fleming's first deposition that Plaintiffs' Trial Counsel alleged was deliberately false.

## I. <u>The Rescheduled Trial</u>

As the Court had predicted, trial could not be re-scheduled for "months and months and months," (Ex. 4 at 5:15-16), until September 9, 2024, with a pretrial conference to be held on September 6, 2024. Ex. 9 at 44:4-5; ECF 194. As a result of the trial being moved until September, two of the trial witnesses who portrayed at-issue costumed characters have returned to college and no longer work at Sesame Place, no longer live within 100 miles of the courthouse, and no longer can attend trial in person without significant hardship. Therefore, Defendants filed a motion for them to appear live at trial via remote means (*e.g.*, Zoom). ECF 228. Plaintiffs opposed that motion, ECF 230, and the Court denied it. ECF 232.

## III. LEGAL STANDARDS

"A district court may impose sanctions pursuant to 28 U.S.C. § 1927, Local Rule 83.6.1, and its inherent power to control the litigation before it." *In re: Avandia Mktg., Sales Practices & Prods. Liability Litig.*, 469 F. Supp. 3d 357, 359 (E.D. Pa. 2020).

### A. Section 1927

"Any attorney … who so multiples the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "Section 1927 requires a court to find an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct." *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 101 (3d Cir. 2008) (quotation omitted). "[T]he principal purpose of sanctions under § 1927 is the deterrence of intentional and unnecessary delay in the proceedings." *Id.* (quotation omitted). Law firms (in addition to individual attorneys) can be sanctioned under § 1927. *See, e.g.*, *Baker Indus., Inc. v. Cerberus Ltd.*, 764 F.2d 204, 212 (3d Cir. 1985) (affirming § 1927 sanctions against law firm).

### B. Local Rule 83.6.1

Eastern District of Pennsylvania Local Civil Rule 83.6.1 states that sanctions are authorized against an attorney who "so multi[plies] the proceedings in a case as to unreasonably and vexatiously increase costs." E.D. Pa. R. Civ. P. 83.6.1(b). An attorney who does so "may be disciplined as the Court shall deem just." E.D. Pa. R. Civ. P. 83.6.1(c); *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 142 (3d Cir. 2009).

### C. The Court's Inherent Authority

Federal courts possess inherent power to "assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S.

32, 45-46 (1991). A "finding of bad faith is 'usually' required" for inherent authority sanctions. *In re Prudential Ins. Co. Am Sales Practice Litig. Agent Actions*, 278 F.3d 175, 181 n.4, 189 (3d Cir. 2002). Pursuant to their inherent authority, courts can sanction attorneys, *see In re Prudential*, 278 F.3d at 189, as well as law firms. *Johnson v. Smithkline Beecham Corp.*, 2015 WL 1004308, at *1 (E.D. Pa. Mar. 9, 2015).

"The imposition of sanctions [in the event of bad faith by delaying the litigation] transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy." *Chambers*, 501 U.S. at 46 (quotations omitted); *see also Goodyear Tire & Rubber Co. v. Hager*, 581 U.S. 101, 107-08 (2017) (a permissible sanction pursuant to the court's inherent authority is an order that the party acting in bad faith reimburse legal fees and costs incurred as a result of the sanctioned party's misbehavior).

A court may use its inherent power to impose sanctions even if the misconduct at issue is also sanctionable under a statute or court rule. *Chambers*, 501 U.S. at 50. Such other mechanisms, "taken alone or together, are not substitutes for the [Court's] inherent power," which "extends to a full range of litigation abuses." *Id.* at 46. The costs and expenses that can be assessed as a sanction pursuant to the Court's inherent authority are broader than those that can be assessed under 28 U.S.C. § 1927. *Ferguson v. Valero Energy Corp.*, 454 F. App'x 109, 114 (3d Cir. 2011) (not precedential).

## IV. THE COURT SHOULD SANCTION PLAINTIFFS' TRIAL COUNSEL AND THEIR LAW FIRMS

The three bases for sanctions overlap, but the below four elements of a § 1927 claim, all of which are present here, make sanctions appropriate under all three bases.

| | **Element** | **28 U.S.C. § 1927** (attorneys and law firms) | **Local Rule 83.6.1** (attorneys) | **Inherent Authority** (attorneys and law firms) |
|---|---|---|---|---|
| 1 | Multiplied Proceedings | X | X | |
| 2 | Unreasonable and Vexatious Means | X | X | X |
| 3 | Increased Costs of Proceedings | X | X | |
| 4 | Bad Faith or Intentional Misconduct | X | X | X |

### A. The Proceedings Have Been Multiplied

As a result of Plaintiffs' counsel's failure [redacted][12] and their improper withdrawal from representing Mr. Fleming during the middle of the trial which precipitated the mistrial, the Court, parties, counsel, and witnesses (some of which are no longer available to attend trial) now have to prepare for and conduct another pretrial conference, jury selection, and trial for the non-Fleming Plaintiffs. And as a result of Plaintiffs' improper severing of both Mr. Fleming and O.F. from the trial of the non-Fleming Plaintiffs, the Court, Defendants, and many witnesses may have to conduct another two other additional trials (for a total of 4—the May trial that resulted in a mistrial; the September trial for the non-Fleming Plaintiffs; a new trial for Mr. Fleming; and a new trial for O.F.). This clearly is a multiplication

[redacted]

of the proceedings on its face, as the Third Circuit has so held. *Ferguson*, 454 F. App'x at 113 (holding that mistrial resulted in "multiplication of proceedings" because "the trial was delayed several months, which caused additional pretrial motions practice, a second jury selection process, and some duplication of trial preparation efforts.").

Plaintiffs' counsel's improper withdrawal and their stone-walling regarding Mr. Fleming's allegedly false deposition statement also multiplied the proceedings by requiring Defendants (1) to file motions and appear at an in-person conference to attempt to get access to the PBA Email and text messages read to the Court during the *ex parte* conference (ECF 200, ECF 206, ECF 216, ECF 225); (2) to file an opposition to Plaintiffs' motion to sever the Fleming Family and reconsideration of the Court's order granting it (ECF 207, ECF 212); (3) to prepare for and conduct Mr. Fleming's August 2024 deposition regarding the circumstances surrounding Plaintiffs' counsel's withdrawal; and (4) to file a motion for two now unavailable witnesses to appear by remote means (ECF 228). *See, e.g.*, *TZE Global Dis Tiscaret A.S. v. Papers Unlimited, Inc.*, 2024 WL 3742715, at *12 (E.D. Pa. Aug. 9, 2024) (imposing § 1927 sanctions in part for attorney misconduct that required opposing counsel to make additional filings).

**B. <u>Plaintiffs' Trial Counsel Acted In An Unreasonable and Vexatious Manner</u>**

[redacted]

[redacted]. *See* Ex. 2. [redacted]. Ex. 3 at 14:4-15:1; 19:18-21:3. They did not do so. Simpson Decl. at ¶ 4. [redacted]

[redacted]

2. <u>It Was Unreasonable and Vexatious to Mislead the Court to Believe that the Grounds for Withdrawal Had Been Met</u>

The Pennsylvania Bar Association attorney "went through Rule 3.3" with the Plaintiffs' Trial Counsel who called seeking advice about Mr. Fleming. Ex. 7 at 3. Pennsylvania Rule of Professional Conduct 3.3, Candor to the Tribunal, requires that if a "lawyer's client … has ***offered material evidence*** … in … a deposition, and the lawyer comes to know of its ***falsity***, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal." Pa. R. Pro. Conduct 3.3(a)(3) (emphasis added). The ABA Formal Ethics Opinion attached to the PBA Email also makes clear that remedial measures are required when there has been a ***material false*** statement. Ex. 7 at 7 ("disclosure of a client's perjury is required by Rule 3.3 where a lawyer has offered ***material evidence*** to a tribunal and comes to know of its ***falsity***, or when disclosure of a ***material fact*** is necessary to avoid assisting a criminal or fraudulent act by the client.") (emphasis added). Plaintiffs' Trial Counsel therefore knew prior to their *ex parte* conference with the Court

---

13 [redacted]

that for their withdrawal of representation to be necessary, Mr. Fleming's at-issue deposition testimony must have been both (1) false and (2) material. It was neither.

**The Testimony was Not False.** [redacted], Ex. 10 at 2:14-3:25, [redacted] Ex. 7 at 3. [redacted] *Id.* This cannot be true because the predicate is not true. Mr. Fleming was not asked in his discovery deposition whether [redacted]. *See* Ex. 1 at 200:4-203:8. [redacted]. *See id.* Thus, regardless of anything else—what happened during Mr. Fleming's trial preparation session or what he testified to in his second deposition—Mr. Harris and Mr. Ruff misrepresented the situation to the Court by misrepresenting what was in Mr. Fleming's discovery deposition.

Despite not being necessary to prove Mr. Harris and Mr. Ruff's misrepresentation, Mr. Fleming's second deposition confirms it. Mr. Fleming testified under oath during his August 2024 deposition that [redacted] was not even a subject of his trial preparation session, Ex. 3 at 36:5-15; 64:8-66:3, and therefore it cannot be true that he "admitted" in that session that he lied about it. Also contrary to what Mr. Harris and Mr. Ruff represented to the PBA and to the Court, Mr. Fleming testified under oath that he did not tell Mr. Harris and Mr. Ruff

in his trial preparation session that he "lied" in his discovery deposition. *Id.* at 35:24-36:4; 36:16-37:8; 64:9-65:7; 82:25-83:7.[14]

Plaintiffs' Trial Counsel may try to argue that the PBA attorney inadvertently mis-conveyed the substance of the conversation in the PBA Email and that the *actual* reason for their withdrawal was as stated in their June 6, 2024 withdrawal letter to Mr. Fleming. This does not save them because (1) the reasoning in their June 6th letter was different than the reasoning they represented to the Court and that the Court relied on in granting their motion to withdraw and motion to sever, and they never corrected that with the Court, making the "updated version" legally irrelevant; and (2) the reasoning in their June 6th letter also would not have justified their withdrawal in any event. Plaintiffs' counsel's June 6th letter does not accurately identify a false statement. In it, they claim that Mr. Fleming lied in his discovery deposition by testifying that he did not delete photographs or videos of his Sesame Place visit after he became a plaintiff in this case. Ex. 8 at Page 9. But in his discovery deposition, Mr. Fleming always admitted that he had deleted photographs and videos of his Sesame Place visit (Ex. 1 at 162:10-167:4; 219:14-222:19),

[14] In multiple text messages with Mr. Ruff over multiple weeks after the trial and before his second deposition, Mr. Fleming continually and emphatically maintained that he did not make a deliberately false statement in his first deposition and ***requested that Mr. Ruff identify what the allegedly false statement was***. *See* Ex. 8 at Page 4 (May 8) ("It's not a false statement"); *id.* at Page 7 (May 8) ("I don't have a clear answer [and] now you are texting me calling me a liar?"); *id.* at Page 8 (May 28) ("You would really tell the court I deliberately made a false statement in my deposition but can't say what I said that was false?"); *id.* at Page 14 (June 6) ("someone can not intend to give a false statement if they aren't even aware of what they said that was false."); *id.* at Page 15 (July 15) ("You never told me what you claim I falsely or deliberately made claims on. I'm still in the dark on that … Let's start there. What did I say that you deemed to be incorrect?"); *id.* at Page 17 (July 15) ("You still haven't answered the question in May, and you haven't answered it now in July … What is it you are alleging I deliberately lied about?"); *id.* at Page 18 (July 15) ("It's a very simple question. What did I, Mr. Fleming say that was intentionally false, incorrect, or was stated that gave you reason to believe I 'deliberately' lied [about] something?"); *id.* at Page 20 (July 15) ("And I'm here to challenge that [the explanation in Mr. Ruff's June 6, 2024 letter] because that's not an accurate account[.]").

and he was equivocal about the time frame of the deletion—repeatedly testifying that he was not sure when he deleted them. *Id.* at 163:3-10; 221:2-222:5 (testifying that deletion could have been "[e]ither before [he became a plaintiff in September] ***or it could have been during***, like before I even knew it was like this drawn out, like") (emphasis added). So the predicate in Plaintiffs' counsel's June 6th letter is also false. Mr. Fleming's under oath testimony in his August 2024 deposition also confirms this. He repeatedly testified therein that in his trial preparation session, Mr. Harris focused on the ***number*** of photographs/videos that Mr. Fleming took and deleted, not on the ***timing*** of the deletion (Ex. 3 at 26:7-11; 49:19-50:2; 91:7-12), and that Mr. Harris confirmed that the answers Mr. Fleming was giving in his trial preparation session were ***the same*** as the answers he gave in his discovery deposition. *Id.* at 28:11-22; 29:8-13; 42:20-43:6; 91:13-92:6; 114:12-20. He also testified that during the trial preparation session, neither Mr. Harris nor Mr. Ruff told Mr. Fleming that they believed his deposition testimony about taking or deleting photographs or videos to be false (*id.* at 39:16-49:23; 102:4-7).[15] The veracity of Mr. Fleming's August 2024 deposition testimony is bolstered by the fact that it is consistent with Mr. Fleming's contemporaneous text message to Mr. Ruff when he received Mr. Ruff's June 6th letter, in which Mr. Fleming challenged the recitation of events therein. Ex. 8 at Page 10 (June 6) ("Stop sending me fabricated nonsense trying to protect your interests. You and I both know that's not how that interview went on <u>May 7th</u>.").

---

[15] Mr. Fleming's testimony also cast doubt on other statements in Mr. Ruff's letter. Mr. Fleming testified under oath that contrary to the June 6th letter, he never told Mr. Harris or Mr. Ruff during his trial preparation session that he had lied during his discovery deposition (*id.* at 35:24-36:4; 36:16-37:8; 64:9-65:7; 82:25-83:7); he in fact ***did not*** make any deliberately false statements in his first deposition (*id.* at 36:16-23; 39:16-43:15; 53:3-18; 119:18-20); he did not tell Mr. Harris or Mr. Ruff during his trial preparation session that he intended to lie on the stand at trial (*id.* at 51:52:5; 84:19-85:20); and during his trial preparation session, neither Mr. Harris nor Mr. Ruff told Mr. Fleming that they would not be calling him as a witness during the trial. *Id.* at 33:10-17; 85:21-86:9.

**The Testimony was Not Material.** Even if Mr. Fleming had lied in his discovery deposition by claiming [redacted] or delete any photographs/videos after becoming a plaintiff (which he did not), Plaintiffs' Trial Counsel never made an effort to explain to the Court why any "lie" was material. *See generally* Ex. 10. There is no evidence that any [redacted] or photographs/videos contained content material to the case. In fact, the evidence that does exists suggests it was not.

As to social media, in his discovery deposition, Mr. Fleming was asked if he posted videos from Sesame Place to his social media, but he was not asked to identify the content of anything he posted to his "Stories" that disappeared after 24 hours. Ex. 1 at 200:4-203:8. Nor did Mr. Harris or Mr. Ruff ask Mr. Fleming about the content of any of his social media posts during his trial preparation session. *See* Ex. 3 at 36:5-15; 64:8-66:3. Thus, there is no evidence that any [redacted] was actually material to the Fleming Family claims in this case (*e.g.*, O.F.'s interactions with costumed characters) rather than something irrelevant (*e.g.*, O.F. eating an ice cream cone).

As to photographs and videos, Mr. Fleming testified in his discovery deposition that the photographs he deleted did not include O.F. with costumed characters, Ex. 1 at 226:6-20, meaning they were ***not material***. The Flemings' claims relate solely to interactions with costumed characters in a parade. The only testimony about deleted videos also suggests that the videos similarly did not involve O.F. with costumed characters, and therefore also were not material. *Id.* at 163:3-10 ("It was just like I don't want to say wasted footage, but … she didn't get no moment or anything like that, so I deleted some of that stuff."). Further, Mr. Fleming testified in his August 2024 deposition that neither Mr. Harris nor Mr. Ruff asked him during the trial preparation session what the ***content*** of the deleted photographs and videos was (*e.g.*, whether it was something

material or not). Ex. 3 at 37:25-38:11. Therefore, when Plaintiffs' Trial Counsel went in to the *ex parte* conference with the Court, they had no evidence of materiality.

Mr. Harris and Mr. Ruff's unreasonable and vexatious conduct in the *ex parte* conference with the Court continued when they misled the Court into believing that Mr. Fleming was unreachable or unavailable to answer to their allegations of a deliberately false deposition statement. *See* Ex. 10 at 3:23-4:3. As a result of Mr. Harris and Mr. Ruff's representations in the *ex parte* conference, the Court believed that "Mr. Fleming apparently is nowhere to be found." Ex. 9 at 23:8-15. The truth, however, was that Mr. Fleming was readily available. Mr. Ruff had been in text message communication with Mr. Fleming right before the start of the *ex parte* conference. *See* Ex. 8 at Page 4 (8:31 a.m. text message from Mr. Ruff to Mr. Fleming and Mr. Fleming's response at 8:35 a.m.); Ex. 10 at 2:1 (*ex parte* conference began at 9:16 a.m.). Had Mr. Harris or Mr. Ruff revealed that to the Court, it is likely that Mr. Fleming could have been reached by phone during the *ex parte* conference to provide his version of events, provide more information to the Court, be informed that he could appear and represent himself, discuss how to proceed with his daughter's case, and potentially avoided the withdrawal and mistrial all together.

Plaintiffs' Trial Counsel misled the Court into believing that counsel had no choice but to withdraw from Mr. Fleming's representation during the middle of the trial, when in fact there was no material false statement by Mr. Fleming and Mr. Fleming could have been available at least by phone to defend himself. Courts have found it unreasonable and vexatious and have imposed sanctions when counsel have made misrepresentations to the court. *See, e.g.*, *TZE Global Dis Tiscaret*, 2024 WL 3742715, at *15 (imposing sanctions against counsel under § 1927 and the court's inherent authority for misrepresenting fact to the Court); *Ha v. Baumgart Café of*

*Livingston*, 2018 WL 1981478, at *5 (D.N.J. Apr. 26, 2018) (finding counsel's misrepresentations to the court were unreasonable and vexatious, and granting sanctions motion under § 1927).

3. <u>It Was Unreasonable and Vexatious to Move to Sever the Fleming Family's Claims Without a Proper Basis</u>

Given that Plaintiffs' Trial Counsel knew or should have known that "Mr. Fleming's issue" did not legitimately require withdrawal, Plaintiffs' counsel's motion on behalf of the non-Fleming Plaintiffs to sever the Fleming Family on the same basis (ECF 203) was also unreasonable and vexatious. As a result of that motion, Defendants were required to respond, the Court was required to rule, and the Court, Defendants, and some witnesses may have to undertake an additional two trials for the severed Fleming Plaintiffs, all with significant associated expense and diversion of resources. *See Johnson v. Res. For Human. Dev.*, 888 F. Supp. 689, 692 (E.D. Pa. 1995) (sanctioning counsel under § 1927 for improperly "presenting support for his assertions"), *aff'd sub nom.*, *Hicks v. Arthur*, 91 F.3d 123 (3d Cir. 1996); *Young v. Smith*, 269 F. Supp. 3d 251, 335 (M.D. Pa. 2017) ("counsel multiplies the proceedings vexatiously when [their] conduct requires the court to spend a considerable amount of time dealing with the consequences of that conduct" (quotation omitted)).

**C. <u>The Costs of the Proceedings Increased as a Result of Plaintiffs' Trial Counsel's Conduct</u>**

As a result of Plaintiffs' Trial Counsel's conduct, the proceeding have been multiplied as described in Section IV.A, *supra.* That multiplication has been costly—Defendants have now had to pay attorneys' fees and expenses for a pretrial conference and three days of trial that all have to be re-done (and potentially will have to pay for the fees and expenses involved in another two trials for the Fleming Family), and have had to spend attorneys' fees and expenses on additional briefing and a second deposition of Mr. Fleming to try to get to the bottom of Plaintiffs' Trial Counsel's misrepresentations. *Barley v. Fox Chase Cancer Ctr.*, 54 F. Supp. 3d 396, 408 (E.D.

Pa. 2014) (finding that misconduct that necessitated onerous briefing "increased cost of proceedings" for § 1927 sanctions). Defendants request that if this Motion is granted, the Court set a schedule for Defendants to submit a petition for the fees and costs associated with the multiplicity of the proceedings and delay so that the Court may determine the appropriate amount.

**D. Plaintiffs' Trial Counsel's Conduct is Tantamount to Bad Faith**

Bad faith "can be demonstrated [] by showing an ulterior motive … or otherwise misrepresenting facts or law to the court." *Johnson*, 888 F. Supp. at 692. Plaintiffs' Trial Counsel and their firms acted in bad faith in at least three ways.

[redacted]

Second, they acted in bad faith by misrepresenting facts to lead the Court to believe that their emergency withdrawal in the middle of trial was required and that Mr. Fleming could not be reached to challenge their narrative (*see* Sec. IV.B.2, 3, *supra*), in order to serve their ulterior motives of delaying the trial so their lead trial counsel, Mr. Murphy, could participate, and cutting loose a client who was becoming frustrating for them to manage. "An attorney's obligation to the court is one that is unique and must be discharged with candor and with great care." *Baker Indus.*, 764 F.2d at 212. Here, Plaintiffs' Trial Counsel abused that obligation and therefore acted in bad faith. *See, e.g.*, *TZE Global Dis Tiscaret*, 2024 WL 3742715, at *14, *17 (finding that attorney acted in bad faith by misrepresenting fact to the court, and imposing sanctions); *Ha*, 2018 WL 1981478, at *5 (finding attorney acted in bad faith by making misrepresentations to and misleading the court, and imposing sanctions under § 1927); *Jacovetti Law, P.C. v. Shelton*, 2020 WL 2556951, at *2 (E.D. Pa. May 20, 2020) (refusing to reconsider imposition of inherent authority

sanctions, finding bad faith and noting that "lying to the Court [is] precisely the type of conduct that jeopardize[s] the judicial process and justif[ies] the Court's use of its … sanctions authority.").

Third, Plaintiffs' counsel and their firms acted in bad faith when they filed their motion to sever the Fleming Family based on facts they knew to be false. In that motion, they represented that severance was appropriate based on "the issue" of which Plaintiffs' Trial Counsel informed the Court during the *ex parte* conference on May 8, 2024. ECF 203, ¶¶ 7, 8. The "issue" Plaintiffs' Trial Counsel presented to the Court during the *ex parte* conference was the [redacted]. Ex. 10 at 2:14-4:1; Ex. 7 at 3. But by the time Plaintiffs' filed the motion to sever on June 17, 2024, Plaintiffs' counsel had already (at least implicitly) recognized that that representation was false. They had already changed their story by June 6, 2024, when they claimed that they needed to withdraw for a different reason. *See* Ex. 8 at Page 9. It is bad faith for counsel to pursue arguments they know are false. *See In re Prudential*, 278 F.3d at 190 (affirming imposition of sanctions and finding of bad faith where, *inter alia*, the attorney made baseless filings requiring the opposing party to respond and the Court to act); *Johnson*, 888 F. Supp. at 692 (sanctioning attorney and finding bad faith where the attorney improperly "present[ed] support for his assertions"); *Loftus v. Se. Pa. Transp. Auth.*, 8 F. Supp. 2d 458, 461 (E.D. Pa. 1998) (imposing sanctions under § 1927 and noting that "bad faith can be implied" "[w]hen a claim is advocated despite the fact that it is patently frivolous[.]").

When attorneys "mak[e] definitive and significant factual representations and the record does not contain the factual basis for [their] contentions, then counsel must account to the Court for misrepresenting the factual record." *Apoian v. Am. Home Prods. Corp.*, 108 F. Supp. 2d 454, 460 (E.D. Pa. 2000). Here, after Plaintiffs' Trial Counsel's first attempt to delay the trial failed, and when Mr. Fleming became challenging for them to deal with, they seized upon an opportunity

to dump him as a client and delay the trial so that Mr. Murphy could participate. But in doing so, they misrepresented material facts to the Court (in addition to falsely claiming that their client—to whom they owed a fiduciary duty—had perjured himself). They should be required to account to the Court for their actions.

## V. **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant its Motion, and order Mr. Harris, Mr. Ruff, and Mr. Duncan to reimburse Defendants for the excess fees, costs, and expenses incurred as a result of their misconduct pursuant to 28 U.S.C. § 1927, Local Rule 83.6.1, and/or the Court's inherent authority, and that their law firms be jointly and severally liable for those fees, costs, and expenses pursuant to 28 U.S.C. § 1927 and/or the Court's inherent authority.

Dated: September 4, 2024

Respectfully submitted,

**DUANE MORRIS LLP**

*/s/ Leigh M. Skipper*
Leigh M. Skipper (PA #49239)
Aleksander W. Smolij (PA #329521)
30 South 17th Street
Philadelphia, PA 19103
Tel.: (215) 979-1157
Fax: (215) 689-4939
lmskipper@duanemorris.com
awsmolij@duanemorris.com

Michelle C. Pardo (*admitted pro hac vice*)
John M. Simpson (*admitted pro hac vice*)
Rebecca E. Bazan (*admitted pro hac vice*)
901 New York Avenue NW, Suite 700 East
Washington, DC 20001
Tel.: (202) 776-7844
Fax: (202) 478-2563
mcpardo@duanemorris.com
jmsimpson@duanemorris.com
rebazan@duanemorris.com

*Attorneys for SeaWorld Parks & Entertainment, Inc. and SeaWorld Parks & Entertainment LLC*